Halina E. RUSZKOWSKI, as Executrix of the Estate of Jerzy T. Ruszkowski, Plaintiff,

v.

HUGH JOHNSON & CO., Inc., Reynolds & Co., Inc. and Reynolds & Co., Defendants.

Civ. No. 10337.

United States District Court
W. D. New York.
July 18, 1969.

Gross, Shuman & Wiltse, Buffalo, N. Y. (Irving M. Shuman, Buffalo, N. Y., of counsel), for plaintiff.

Lesher, Howitt & Jenkins, Buffalo, N. Y. (Robert S. Lesher, Buffalo, N. Y., of counsel), for defendant Hugh Johnson & Co., Inc.

Townsend & Lewis, New York City (Eliot H. Lumbard, New York City, of counsel), for defendant Reynolds & Co.

CURTIN, District Judge.

In this action tried to the court without a jury, plaintiff seeks recision of the purchase of ten (10) convertible bonds of Tenax, Inc. having a face value of $1,000 apiece. Plaintiff seeks to recover the purchase price of these bonds, including interest and expenses, totalling $5,910.28.

Plaintiff relies upon Section 12(2) of the Securities Act of 1933 (15 U.S.C. § 77l), Section 10(b) of the Exchange Act of 1934 (15 U.S.C. § 78j), and Rule 10b–5 of the Securities and Exchange Commission Rules (17 C.F.R. § 240.-10b–5).

The original plaintiff, Dr. Jerzy Ruszkowski, died after the commencement of this lawsuit, and Halina Ruszkowski, his widow and Executrix of his estate, was

substituted as plaintiff by order of this court. Because of Dr. Ruszkowski's death, plaintiff's case consisted primarily of two depositions taken of the decedent before trial. Defense counsel objected to the consideration of these depositions since cross-examination of Dr. Ruszkowski was not completed before his death. The objection of defense counsel to the depositions was overruled and they were considered by the court.

Before trial, the parties agreed that the action against Gregory & Sons should be discontinued, and, at trial, plaintiff further agreed to the dismissal of its action against Reynolds & Co., Inc. The action against both these defendants is ordered dismissed.

With respect to the remaining defendants, Hugh Johnson & Co., Inc. and Reynolds & Co. [hereinafter referred to as Hugh Johnson and Reynolds], the following constitutes this court's decision, findings of fact and conclusions of law.

Prior to August, 1962, Dr. Jerzy T. Ruszkowski had engaged in numerous speculative transactions involving securities and convertible bonds, similar to those purchased in this case. Quite often, he would hold his purchases for a short term and then sell them for a small profit or loss. For example, his tax records for 1960 reflect that, during that year, he sold securities on approximately 12 different occasions, holding many of these securities for only a few days before selling. Tax records for 1961 show 25 similar short-term transactions occurred during that year.

Dr. Ruszkowski purchased the ten (10) Tenax, Inc. convertible bonds in issue here on August 21, 1962 through Thomas A. Street, at that time a registered representative of defendant, Hugh Johnson. Before this, Dr. Ruszkowski had called Mr. Street on a number of occasions to obtain market quotations and current news about the market situation. Before August 21, 1962, Mr. Street had recommended securities to Dr. Ruszkowski on one or two occasions, but Dr. Ruszkowski had not acted on these recommendations. During this period, Dr.

Ruszkowski bought some securities through Street but, on each occasion, Street had served merely as an "ordertaker." All the investment decisions were made by Dr. Ruszkowski.

During this period prior to August 21, 1962, Dr. Ruszkowski was a customer of Hugh Johnson and not of Reynolds. Reynolds, a New York limited partnership, is engaged in the business of a securities broker-dealer. During the period in question Reynolds was a correspondent firm of Hugh Johnson. Reynolds maintained a special brokerage account in the name of Hugh Johnson, through which transactions for Hugh Johnson were conducted on a customer-broker basis.

Alexander Haig, Jr. was an "over-the-counter trader" with Reynolds, with whom out-of-town correspondent firms, including Hugh Johnson, could communicate. Reynolds did not make a market in Tenax, Inc. and Mr. Haig had nothing to do with bonds and did no trading in them.

Shortly before August 21, 1962, Richard Posmantur, a registered representative employed by Hugh Johnson, called Mr. Haig on the telephone. During their conversation, Mr. Posmantur asked Mr. Haig what was new in the stock market. Mr. Haig responded that there was a rumor going around that Tenax, Inc. had been negotiating for a bank loan, not yet made public, which, if obtained, would place the company in a more advantageous financial condition. He further stated that this was not reflected in the price of the common stock of Tenax. During the course of the conversation, no mention was made of Tenax bonds or the use to which Mr. Posmantur would put the information. Some time during the day on August 21, Mr. Posmantur relayed this rumor to his associate at Hugh Johnson, Mr. Street.

On August 21, during the course of one of frequent telephone conversations, Dr. Ruszkowski asked Mr. Street what was new in the market. Mr. Street responded that there was a rumor that a company called Tenax was going to re-

ceive a loan. Dr. Ruszkowski stated that he knew about Tenax and had some information about its convertible bond from another source. Dr. Ruszkowski asked Mr. Street to get him a quotation on the bonds and to call him back. Mr. Street found out that the bonds were at $56 bid and $62 offer. He relayed this information to Dr. Ruszkowski, who instructed Mr. Street to buy "$10,000 worth of the bonds at 56 with one point discretion." Mr. Street filled the order at $57 (actually $570 per $1000 bond). The total purchase price with interest and expenses was $5910.28. There was no direct contact between Reynolds and Dr. Ruszkowski.

A day or two after the purchase by Dr. Ruszkowski, the price of this security dropped sharply. In the fall of 1962, it reached a low of $10 and a high of $35 per $100 in bonds. Tenax, Inc. never obtained the rumored loan. Eventually the company went into bankruptcy and the bonds became worthless.

No written report, research information or recommendation concerning Tenax was sent by Reynolds to either Hugh Johnson or Dr. Ruszkowski.

Section 10(b) of the 1934 Act provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Expanding upon this statutory language, Rule 10b–5(b) provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails or of any facility of any national securities exchange,

\* \* \* \* \* \*

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading,

\* \* \* \* \* \*

in connection with the purchase or sale of any security."

■ In the claim based upon Section 10(b) of the 1934 Act and Rule 10b–5(b) promulgated by the Securities and Exchange Commission, plaintiff must prove by a preponderance of the evidence that there was a knowing misrepresentation or non-disclosure as to material facts by the defendant, and that he, as plaintiff, in making the purchase, relied upon the misrepresentation or non-disclosure. See Myzel v. Fields, 386 F.2d 718 (8th Cir. 1967).

In List v. Fashion Park, Inc., 340 F. 2d 457, 462 (2d Cir. 1965), the court defined materiality:

"The basic test of materiality \* \* is whether 'a reasonable man would attach importance [to the fact misrepresented] in determining his choice of action in the transaction in question.' Restatement, Torts § 538(2) (a)."

The court also defined reliance:

"The test of 'reliance' is whether 'the misrepresentation is a substantial factor in determining the course of conduct which results in [the recipient's] loss.' Restatement, Torts § 546 (1938)."

The court correlated these concepts when it said:

"Thus, to the requirement that the *individual plaintiff* must have acted upon the fact misrepresented, is added

the parallel requirement that a *reasonable man* would also have acted upon the fact misrepresented."

■ One of the elements of a 10b–5 violation is defendant's knowledge ("scienter") that a certain material fact is being misrepresented or not disclosed. Weber v. CMP Corp., 242 F.Supp. 321, 324 (S.D.N.Y.1965) and Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951). The *Fischman* case stated that, in actions under Rule 10b–5, fraud, i. e. knowledge of the falsity of the alleged untrue statements, must be alleged and proved.

■ Considering all the facts presented in this case, the plaintiff has failed to sustain burden of proof with respect to the Rule 10b–5 action and, accordingly, this cause of action, as to both defendants, is dismissed with prejudice.

Plaintiff also brings an action under Section 12(2) of the 1933 Act [15 U.S.C. § 77*l*(2)]. Section 12(2) provides in pertinent part that any person who—

\* \* \* \* \* \*

"(2) offers or sells a security \* \* by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of \* \* \* oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him \* \* \*."

To sustain his burden under the Section 12(2) action, plaintiff must only show that the defendant offered or sold him a security "by means of" a communication which included an untrue statement of material fact—the plaintiff not

knowing of the untruth of such statement. Plaintiff will prevail if he sustains this burden unless the defendant is able to show that he—the defendant—did not know and, in the exercise of reasonable care, could not have known that the facts stated were not true.

In the transaction in issue, the initiative was taken by Dr. Ruszkowski, who was always eager for stock market tips. Mr. Street did not solicit the sale of Tenax bonds or try to persuade Dr. Ruszkowski to purchase a particular security. The Doctor spoke of the Tenax convertible bonds first and asked the broker to obtain a quote on the bonds. There was no sales pitch or detailed listing of information by the broker.

An "offer or sale" violative of Section 12(2) must be made "by means of" a material misstatement. Assuming the statement made was material and untrue, it must be established that the sale was made "by means of" the material misstatement. Perhaps if Mr. Street had not mentioned Tenax stock, the Doctor would have never inquired about the Tenax convertible bonds and the ultimate sale would have never occurred. But was Street's statement the cause of the sale? The court has endeavored not to permit hindsight to provide an answer to this important question. This question as well as the other questions raised in this case can only be answered after considering all of the circumstances occurring immediately prior to and contemporaneously with the sale.

■■ Dr. Ruszkowski was a speculator, making frequent trades in stocks and convertible bonds. The market was his daily concern. Prior to this sale, the Doctor had not accepted a single recommendation made by Mr. Street. The court finds that the sale was not brought about because of any recommendation made by Mr. Street. The statement made by him evidently triggered interest in Tenax on the part of the Doctor but, considering all the facts presented, although the information passed on by Street may have been one of the factors which led up to the sale,

**1376**

the sale was not made "by means of" this information. It should be emphasized again that this analysis is based upon the assumption that the misstatement was material.

In any event, the court finds that the statement made was not of a material fact. What Mr. Street conveyed to the Doctor was a rumor, i. e., an unverified statement. Street said to Dr. Ruszkowski: "There is a *rumor* on a company called Tenax * * * They are going to get a bank loan."

The purpose of Section 12(2) is not to guard investors against utterances of rumors concerning the market, but rather it was intended to protect the investor from misstatements of material fact which a seller either knowingly or carelessly communicates.

Referring to the definition of "materiality" quoted above, which is also applicable to Section 12(2) cases, the court finds that a reasonable man would not have attached importance to Street's statement in determining whether or not to buy these bonds.

■ Speculators are entitled to the same protection afforded the conservative investor under Section 12(2). However, the speculator is not entitled to favored treatment if he fails to act "reasonably" under all the circumstances. It is hardly reasonable for either a conservative investor or a speculator to purchase $10,000 face value of bonds for $5700 based upon mere rumor.

■ The court further concludes that Reynolds is not responsible to the plaintiff under Section 12(2) because no privity existed between Reynolds and Dr. Ruszkowski at the time of the sale. See Winter v. D. J. & M. Investment and Construction Corp., 185 F.Supp. 943 (S.D.Cal.1960); Demarco v. Edens, 390 F.2d 836, 841 n. 3 (2d Cir. 1968); and Annotations, 50 A.L.R.2d 1228 (1956).

Therefore, plaintiff's cause of action against both defendants based upon Section 12(2) is dismissed with prejudice.