Michael J. DALEY, Plaintiff, Appellant,

v.

CAPITOL BANK AND TRUST COMPANY, Defendant, Appellee.

No. 74-1261.

United States Court of Appeals,
First Circuit.

Argued Nov. 6, 1974.

Decided Nov. 29, 1974.

John D. O'Reilly, Jr., Boston, Mass., with whom Philip J. Murphy, Fitchburg, Mass., was on brief, for appellant.

James R. DeGiacomo, Boston, Mass., with whom Judith K. Wyman and Roche, Carens & DeGiacomo, Boston, Mass., were on brief, for appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Plaintiff Daley seeks to rescind certain loan transactions with the defendant bank and to recover damages allegedly resulting from these transactions. His claim is based on the bank's alleged violations of Regulation U, 12 C.F.R. part 221, promulgated by the Board of Governors of the Federal Reserve System pursuant to § 7(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78g(a) (1970). The bank denied that the loan transactions violated Regulation U and by counterclaim sought to recover from Daley the balance of $116,231.97 due under these loans.

The case was tried to the court which found that three of the four loan transactions were not made in violation of Regulation U. As to the fourth loan, the second in chronological sequence, the court held that it was made in violation of Regulation U and permitted Daley to rescind this transaction. The court found for the bank on its counterclaim but permitted diminution by the amount of the fourth loan in the sum of $19,300 and entered judgment for the bank in the amount of $96,931.97. Daley appeals.

Section 29(b) of the Securities Exchange Act of 1934 renders any contract made in violation of pertinent regulations voidable at the option of the non-violating party. Goldman v. Bank of the Commonwealth, 332 F.Supp. 699 (E.D.Mich.1971), aff'd, 467 F.2d 439 (6th Cir. 1972). Regulation U, promulgated in 1936, regulates bank credit extended for the purpose of purchasing or carrying margin stock. The regulation defines margin stock principally as stock registered on national securities exchanges or appearing on a list of over-the-counter stocks. 12 C.F.R. § 221.3(d). The supplements to the regulation which are issued from time to time fix the specific level of margin requirements in terms of the "maximum loan value," the amount of credit which a lender may extend on the stock. For credit extended by a bank to be subject to Regulation U two conditions must be met. First, the credit must be "purpose credit," i. e. credit extended for the purpose of purchasing or carrying margin stock. 12 C.F.R. § 221.1(a). The second condition is that the purpose loan must be secured directly or indirectly, in whole or in part, by any stock, whether or not it is margin stock. 12 C.F.R. § 221.1(a). A violation of Regulation U occurs when the amount of the purpose loan exceeds the maximum loan value of the stock securing the loan. 12 C.F.R. § 221.1(a). See Cooper v. Union Bank, 354 F.Supp. 669, 675 (C.D.Cal.1973).

Daley does not challenge the trial court's conclusion that the proceeds of the three loans in question were neither intended nor used for the purpose of purchasing or carrying margin stock. Rather, he contends that they were transformed into purpose credits by virtue of the bank's failure to segregate the collateral held for these credits from the collateral securing the single purpose

credit. Since the bank treated all the loans as a single credit, he argues we are bound to do likewise and hold that the non-purpose credits were tainted by their aggregation with the purpose credit on the bank's books and became subject to Regulation U. When so treated the total credit exceeds the maximum loan value of all the collateral, thus allegedly violating the regulation and entitling Daley to rescission of the entire credit.

■ No authority supports this reasoning. It is perfectly proper for a bank to extend purpose and non-purpose credits to a customer simultaneously or successively. 12 C.F.R. § 221.120(b), Goldman v. Bank of the Commonwealth, 467 F.2d 439, 442–443 (6th Cir. 1972). The Federal Reserve Board interpretation of the regulation specifically provides that the original purpose of the loan is controlling. 12 C.F.R. § 221.-101(a). And the regulation itself states that the purpose of a credit is determined by substance rather than form. 12 C.F.R. § 221.3(b). Since these credits were admittedly never used to purchase or carry margin stocks, and could not have contributed to the evils which the statute and the regulation were designed to control (see discussion *infra*), it would exalt form over substance to allow the bank's internal bookkeeping procedures to prevail over the court's characterization based on actual purpose.

■ The bank did fail to identify the collateral securing the purpose loan as required by 12 C.F.R. § 221.3(n)(1). This provision is designed to prevent the evasion of the regulation that could result if a bank obtained extra stock collateral for a non-purpose loan while extending purpose credit ostensibly not secured by stock and hence not covered by the regulation. (No such evasion occurred here, where the bank stipulated that it held stock collateral securing the purpose credit and was found to have violated the regulation as to that credit by loaning more than the maximum loan value of the collateral.) The Board in

its interpretation of this provision, 12 C.F.R. § 221.120, looked through such a failure to identify and concluded that the stock ostensibly securing only the non-purpose credit in actuality secured both credits, bringing the purpose credit within the regulation's coverage. However, it did not go on to suggest what Daley would have us hold: that the availability of the same collateral as security for both credits could somehow bring the non-purpose credits within the ambit of the regulation as well. What Daley is seeking to do is to penalize the bank twice. The bank has suffered in full by losing the improper loan in its entirety. No reason suggests itself why it should suffer further. The district court was correct in holding that the three credits in question were non-purpose loans.

■■ Daley next contends that even if the loans were not purpose loans, the bank's failure to obtain from him a so-called "purpose statement," Form U–1, as to these loans violated 12 C.F.R. § 221.3(a) and entitled him to rescind. Although the requirement that a bank obtain and retain a declaration of purpose from any borrower who pledges stock as collateral is not limited in terms to purpose loans, we are not persuaded by this argument. Even if the bank violated the regulation's technical record-keeping requirements, the credits themselves cannot fairly be said to have been extended in violation of the regulation so as to permit rescission under § 29(b) of the Exchange Act. Non-purpose credit is not a concern of the Act or Regulation U. Tartell v. Chelsea National Bank, 351 F.Supp. 1071, 1076 (S.D.N.Y.), aff'd mem., 470 F.2d 994 (2d Cir. 1972). The margin provisions were enacted primarily to stabilize the securities markets by regulating the flow of credit, and secondarily to protect margin stock purchasers. *See* Note, Federal Margin Requirements as a Basis for Civil Liability, 66 Colum.L.Rev. 1462, 1467–71 (1966). Since the credits were neither intended nor used to purchase margin stock, neither goal would be

served by allowing Daley to rescind. In fact, the purpose statement requirement was adopted to benefit the lending bank by affording it a defense against rescission when the statement was accepted in good faith. Serzysko v. Chase Manhattan Bank, 290 F.Supp. 74, 89 (S.D.N.Y. 1968), aff'd mem., 409 F.2d 1360 (2d Cir.), cert. denied, 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180 (1969). We are aware of no authority supporting Daley's attempt to use this shield of the bank as a sword against it. Nothing in the regulation renders the obligation Daley incurred improper, and the district court properly enforced it.

Affirmed.