Charles F. EVANS, Jr., Plaintiff,

v.

KERBS AND COMPANY, a partnership, et al., Defendants.

No. 74 Civ. 5621 (JMC).

United States District Court,
S. D. New York.

March 2, 1976.

Charles F. Evans, Jr., *pro se.*

Willkie, Farr & Gallagher, New York City (Louis A. Craco, Richard L. Feller and Michael B. Targoff, New York City of counsel), for defendant Hardy & Co.

Rosner, Rosner & McEvoy, New York City (Andrew T. McEvoy, Jr., New York City, of counsel), for defendants Kerbs and Company, Edward Kerbs and John Kerbs.

Milbank, Tweed, Hadley & McCloy, New York City (Russell E. Brooks, New York City, of counsel), for defendant New York Stock Exchange, Inc.

## OPINION

CANNELLA, District Judge:

Plaintiff Charles F. Evans, Jr. (Evans) brings this action against Hardy & Co. (Hardy), Kerbs and Company (Kerbs), Edward Kerbs, John Kerbs and the New York Stock Exchange, Inc. (NYSE or the Exchange) for claims arising from their alleged violation of the margin and anti-fraud provisions of the federal securities laws.[1] Plaintiff seeks rescission of cer-

---

1. Section 7 of the Securities Exchange Act of 1934, 15 U.S.C. § 78g states:

§ 78g. Margin requirements

(a) For the purpose of preventing the excessive use of credit for the purchase or carrying of securities, the Board of Governors of the Federal Reserve System shall . . . prescribe rules and regulations with respect to the amount of credit that may be initially extended and subsequently maintained on any security (other than an exempted security). . . .

. . . . .

(c) It shall be unlawful for any member of a national securities exchange or any broker or dealer, directly or indirectly, to extend or maintain credit or arrange for the extension or

tain stock transactions executed through defendants Hardy and Kerbs, and damages for losses said to have resulted from the claimed violations. Defendants Edward and John Kerbs are sued as partners of Hardy & Co. and Kerbs and Company. The broker defendants, Hardy and Kerbs, move to dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Defendant NYSE similarly moves to dismiss, and in the alternative makes a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. These motions are denied.

## THE COMPLAINT

At this stage of the proceedings the following allegations of plaintiff's complaint must be deemed true:

Defendants Hardy and Kerbs, both members of the New York and American Stock Exchanges, were partnerships organized under the laws of New York and doing business as securities brokers-dealers. Beginning in 1962, Kerbs maintained both margin and cash accounts for the purchase and sale of securities on plaintiff's behalf. Sometime during 1967 Kerbs transferred plaintiff's accounts to defendant Hardy and thereafter and until February 28, 1973 Hardy cleared plaintiff's stock transactions originating through Kerbs.[2] Evans' registered representative at Kerbs during this period

was John Sheehy, whom he relied on for investment information and advice.[3]

Immediately prior to and during the period between December 23, 1971 and November 30, 1972, Sheehy informed Evans that it would be advisable to invest any available capital in equity securities and to maximize his potential return thereon through margin borrowing to the extent permitted by law. Furthermore, Sheehy advised that Evans take greater positions in fewer stocks. Evans followed these suggestions. Sheehy also informed plaintiff that the regulations applicable to these transactions required the maintenance of no greater than 25 percent margin in his account. This meant that if Evans chose to trade on margin, he must always have equity in his account equal to at least twenty-five percent of the market value of his securities. These minimum permissible margin maintenance levels are set by New York Stock Exchange Rule 431 and American Stock Exchange Rule 462.[4]

Evans contends that insofar as certain of his holdings were subject to unusually rapid or violent changes in value or held in such amounts that they could not be liquidated promptly, the applicable provisions of Rules 431 and 462 were not the minimum requirements contained in subsection (b)(1), but the additional margin requirements of subsection (d)(1). It is

---

maintenance of credit to or for any customer—

 (1) on any security (other than an exempted security), in contravention of the rules and regulations which the Board of Governors of the Federal Reserve System shall prescribe under subsections (a) and (b) of this section.

The antifraud provisions cited by plaintiff are Sections 12(2) and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77*l*(2), 77q; Sections 10(b) and 15(c) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78*o*(c); and Securities Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5.

**2.** Although Evans dealt directly with Kerbs, his accounts were actually maintained by Hardy.

**3.** Sheehy, a long-time personal friend of the plaintiff, was not made a party to this action.

**4.** The relevant provisions of these rules, which are identical, read as follows:

Maintenance margin rule

 . . . .

 (b) The margin which must be maintained in margin accounts of customers, whether members, allied members, member organizations or non-members, shall be as follows:

 (1) 25% of the market value of all securities "long" in the account. . . .

 . . . . .

(d)(1) Determination of Value for Margin Purposes

 . . . Substantial additional margin must be required in all cases where the securities carried are subject to unusually rapid or violent changes in value, or do not have an active market on a recognized exchange, or where the amount carried is such that it cannot be liquidated promptly.

further alleged that the broker defendants, at all times relevant herein, were aware that these latter regulations requiring that plaintiff maintain a margin level substantially greater than twenty-five percent in his account were applicable, but did not communicate this information to him. In fact, he did not learn of the existence of these rules until January of 1974.

Beginning in December of 1972 and continuing thereafter the amount of margin in plaintiff's account fell below that allegedly required by NYSE Rule 431 and AMEX Rule 462. However, plaintiff did not receive a request for additional margin until on or about January 30, 1973, when the margin in his account had declined below twenty-five percent. At that time, plaintiff was advised that the sale of any securities then in his margin account would be likely to depress their market price even further, resulting in the elimination of all margin and plaintiff's equity in the account.[5] Consequently, he attempted to meet the margin call by depositing his remaining liquid assets with Hardy.

The market values of plaintiff's securities continued to decline and, on February 28, 1973, when plaintiff's equity in the account had dipped to nine percent, Hardy began liquidating the account. Due to the nature of the market for plaintiff's securities, liquidation had not been completed by the commencement of the instant action on December 20, 1974. However, plaintiff did not receive any additional requests for margin until August 2, 1974.

With respect to the New York Stock Exchange, the complaint alleges that sometime during the latter half of 1972 the Exchange, while reviewing plaintiff's account with Hardy, discovered that the account was either undermargined or in danger of becoming undermargined in violation of NYSE Rule 431 and communicated this to defendant Hardy. However, NYSE failed to follow up its warning to ascertain whether any remedial action had been taken in connection with plaintiff's account. As a result, the account remained in violation of Rule 431 until liquidation began on February 28, 1973.

## DISCUSSION

■ Contrary to defendants' assertion, plaintiff's claim is not premised upon the broker defendants' failure to liquidate his margin account promptly after a decline in market value of the stock held in the account caused the equity in the account to fall below the minimum requirement of the stock exchange rules, a claim insufficient under the law of this circuit. See Shemtob v. Shearson, Hammill & Co., 448 F.2d 442 (2d Cir. 1971). The complaint, construed in the light most favorable to plaintiff, states the following claim: Evans, having been induced to maintain a margin account with the broker defendants, was injured by their intentional misstatement of and failure to apply the appropriate maintenance margin requirements under the federal securities laws and stock exchange rules.

In essence, the issue presented is whether an implied private right of action is available to an individual investor for an alleged violation of NYSE Rule 431 and AMEX Rule 462 by a securities broker or dealer. The Court finds that under the facts contained in the instant complaint, such an action is maintainable.

■ There is no question that an implied federal right of action exists for violations of certain provisions of the federal securities laws. See J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Colonial Realty Corp. v. Bache & Co., 358 F.2d 178 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966); Baird v. Franklin, 141 F.2d 238 (2d Cir.), cert. denied, 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944). This judicial recognition "of a

---

5. It is precisely for this reason that plaintiff asserts that the additional margin requirements applied to his holdings.

private remedy not expressly afforded by the Securities Exchange Act is predicated on the duty of the courts 'to make effective the congressional purpose' represented in 'the statute and the federal policy which it has adopted.' " *Colonial Realty Corp., supra* at 181, quoting from *J. I. Case v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423, 428 (1964). This is a consequence of the doctrine that violation of a legislative enactment by doing a prohibited act may render a party liable to a private individual where the intent of the act is to afford protection to the interest of another and that interest is in fact invaded.[6]

■ Whether such a claim can be maintained for violation of stock exchange rules is a more difficult problem, as the effect and significance of particular rules will vary with their relationship to the provisions and purposes of the securities laws and the regulations promulgated thereunder. In this area the Court of Appeals for the Second Circuit has formulated the following rule to be applied when determining whether violation of a particular stock exchange rule will give rise to an implied private right under the federal securities laws.

What emerges is that whether courts are to imply federal civil liability for violation of exchange or dealer association rules by a member cannot be determined on the simplistic all-or-nothing basis urged by the two par-

ties; rather, the court must look to the nature of the particular rule and its place in the regulatory scheme, with the party urging the implication of a federal liability carrying a considerably heavier burden of persuasion than when the violation is of the statute or an SEC regulation.

*Colonial Realty Corp., supra,* at 182. Applying this analysis, federal courts have found that certain stock exchange rules play an integral part in Securities and Exchange Commission and Federal Reserve Board regulation for protection of the public, *Hayden v. Walston & Co.,* 528 F.2d 901 (9th Cir. 1975); *Van Gemert v. Boeing Co.,* 520 F.2d 1373 (2d Cir. 1975); *Securities and Exchange Comm'n v. First Securities Co.,* 463 F.2d 981 (7th Cir.), *cert. denied,* 409 U.S. 880, 93 S.Ct. 85, 34 L.Ed.2d 134 (1972); *Avern Trust Co. v. Clarke,* 415 F.2d 1238 (7th Cir. 1972); *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith,* 410 F.2d 135 (7th Cir.), *cert. denied,* 396 U.S. 838, 90 S.Ct. 98, 24 L. Ed.2d 88 (1969); *Colonial Realty Corp., supra,* and will consequently support a private right of action. *Van Gemert, supra* at 1380–81; *Ocrant v. Dean Witter & Co., Inc.,* 502 F.2d 854, 858 (10th Cir. 1974); *Buttrey, supra; Colonial Realty Corp., supra.*[7]

■ With this in mind, we turn to an analysis of the position of . NYSE Rule 431 and AMEX Rule 462 in the regula-

---

**6.** In addition to the protection intended by the legislature, implication of a private right of action may be suggested by such considerations as the ineffectiveness of existing remedies to achieve that end, *see Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966); and the use of private actions by individual investors as an effective means of protecting the economy as a whole. *See Pearlstein v. Scudder & German,* 429 F.2d 1136 (2d Cir. 1970), *cert. denied,* 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971).

**7.** The jurisdictional provision of the Securities and Exchange Act of 1934 is contained in Section 27 and provides in part as follows:

Jurisdiction of Offenses and Suits

The district courts of the United States, and the United States courts of any Territo-

ry or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. . . .

15 U.S.C. § 78aa. There is nothing inconsistent with this section in holding that violations of stock exchange rules may be actionable as a "duty created by this chapter" inasmuch as such rules are promulgated in accordance with certain sections of the Act, although they themselves may not be considered rules thereunder. *See Colonial Realty Corp., supra.*

tory scheme. These rules govern the minimum amount of equity that must be maintained in a margin account. They are constructed in such a way that when a broker extends credit the available security, that is, the assets in the margin account, will always be sufficient to satisfy the broker's claim against the customer. *Carras v. Burns*, 516 F.2d 251, 260 (4th Cir. 1975). *See Gordon v. du-Pont Glore Forgan Incorporated*, 487 F.2d 1260, 1263 (5th Cir. 1973), *cert. denied*, 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 666 (1974). Thus, it can be seen that one of the purposes, if not the primary purpose of the rules, is protection of the broker. However, that this was not their sole purpose can be seen from the legislative history of the margin provisions contained in the 1934 Act.

■ Section 7 of the Act requires the Board of Governors of the Federal Reserve System (Federal Reserve Board) to "prescribe rules and regulations with respect to the amount of credit that may be initially extended and *subsequently maintained* on any security (other than an exempted security)"[8] (emphasis added). That an incidental purpose of this section was the protection of the individual investor is borne out by the legislative history of the enactment,[9] as well as recent decisions of the courts of appeals. *Cf. Daley v. Capitol Bank & Trust Co.*, 506 F.2d 1375 (1st Cir. 1974); *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2d Cir. 1970), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971). Pursuant to this statutory directive the Federal Reserve Board promulgated Regulation T, which prescribes complex rules for the amount of margin to be initially required but specifically declines to regulate maintenance margin levels. They are left to the discretion of the stock exchanges and individual lenders.[10] In accordance with the above-mentioned incidental purpose of Section 7, numerous courts have concluded that violations of Regulation T will give rise to an implied federal right of action. *See, e. g., McCormick v. Esposito*, 500 F.2d 620 (5th Cir. 1974), *cert. denied*, 420 U.S. 912, 95 S.Ct. 834, 42 L.Ed.2d 842 (1975); *Spoon v. Walter & Co., Inc.*, 478 F.2d 246 (6th Cir. 1973); *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2d Cir. 1970), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971); *Junger v. Hertz, Neumark & Warner*, 426 F.2d 805 (2d Cir.), *cert. denied*, 400 U.S. 880, 91 S.Ct. 125, 27 L.Ed.2d 118 (1970); *Bell v. J. D. Winer & Co., Inc.*, 392 F.Supp. 646 (S.D. N.Y.1975). *Cf. Daley v. Capitol Bank & Trust Co.*, 506 F.2d 1375 (1st Cir. 1974).[11]

**8.** 15 U.S.C. § 78g(a).

**9.** The main purpose of these margin provisions . . . is not to increase the safety of security loans for lenders. Banks and brokers normally require sufficient collateral to make themselves safe without the help of law. Nor is the main purpose even protection of the small speculator by making it impossible for him to spread himself too thinly—although such a result will be achieved as a byproduct of the main purpose.

H.R.Rep.No.1383, 73d Cong., 2d Sess. 8 (1934). For an in-depth discussion of the purposes of the margin requirements, *see* Note, *Federal Margin Requirements as a Basis for Civil Liability*, 66 Colum.L.Rev. 1462 (1966).

**10.** 12 C.F.R. § 220:

§ 220.7 Miscellaneous provisions.

. . . . .

(b) Maintenance of credit. Except as otherwise specifically forbidden by this part, any credit initially extended without violation of this part may be maintained regardless of (1) reductions in the customer's equity resulting from changes in market prices.

. . .

. . . . .

(e) Additional requirements by exchanges and creditors. Nothing in this part shall (1) prevent any exchange or national securities association from adopting and enforcing any rule or regulation further restricting the time or manner in which its members must obtain initial or additional margin in customer's accounts because of transactions effected in such accounts, or requiring such members to secure or maintain higher margins, or further restricting the amount of credit which may be extended or maintained by them. . . .

**11.** This Court is aware of the recent trend away from the rationale supporting these cases in light of the addition of Section 7(f) to the Act, 15 U.S.C. § 78g(f), *see Pearlstein v. Scudder & German*, 527 F.2d 1141, at 1145, (2d Cir.

However, the express declination of the Federal Reserve Board to prescribe maintenance margin requirements has led at least one court to conclude that the direct protection of the investor was not one of the purposes of the instant stock exchange rules. *Pearl v. Shearson, Hammill & Co.*, Civ.No. 9187 (W.D. Wash., May 1972). Their primary if not sole purpose is protection of the financial integrity of the exchange's member firms, thereby defeating an investor's claim of implied private remedy.[12] *Carras v. Burns*, 516 F.2d 251, 260 (4th Cir. 1975);[13] *Pearl v. Shearson, Hammill & Co., supra.* Other courts have refused to go quite so far, being unwilling to foreclose the possibility that in appropriate circumstances violation of Rule 431 of the New York Stock Exchange (and, therefore, its counterpart, AMEX Rule 462) would create a federally cognizable right of action. *McCormick v. Esposito*, 500 F.2d 620 (5th Cir. 1974), *cert. denied*, 420 U.S. 912, 95 S.Ct. 834, 42 L.Ed.2d 842 (1975); *Gordon v. duPont Glore Forgan Incorporated*, 487 F.2d 1260 (5th Cir. 1973), *cert. denied*, 417 U.S. 946, 94 S.Ct. 307, 41 L.Ed.2d 666 (1974).[14] Such circumstances might well include situations where, as here, the provisions requiring substantial additional margin are concerned, for these requirements apply to particularly volatile or illiquid stocks, *i. e.*, those stocks which are most likely to jeopardize the investments of both the lender and the individual investor in circumstances demanding liquidation.

However, at this juncture the Court need not reach the interesting question of whether a violation of NYSE Rule 431 and AMEX Rule 462 without more is *per se* actionable by private parties.[15] The complaint herein alleges far more than a mere violation of the maintenance margin requirements. It asserts that the broker defendants knew of their applicability to plaintiff's account and intentionally failed to inform plaintiff of this. They were also allegedly aware in December of 1972 that the account had dipped below the maintenance requirements, but intentionally failed to liquidate the account promptly because of their own problems in satisfying NYSE's net capital requirements. Various courts have held that a private cause of action

1975); *Bell v. J. D. Winer & Co.*, 392 F.Supp. 646, 652–54 (S.D.N.Y.1975). However, in that the instant complainant alleges that he was misinformed as to the appropriate margin requirements, this Court finds continuing validity in their reasoning.

**12.** It is this Court's opinion that inquiry cannot end at the Federal Reserve Board's refusal to handle the issue, as the considerations discussed above, *see* notes 5–9 and accompanying text, *supra*, must be analyzed. In addition, the Securities and Exchange Commission has the authority to regulate margin deposits under § 19(b)(12) of the Securities Exchange Act of 1934, 15 U.S.C. § 78s(b)(12).

**13.** In this case, the Fourth Circuit expressed its opinion that maintenance margin requirements are established primarily to protect the solvency of brokers by assuring adequate collateral for loans that finance customer speculation, and not for investor protection. 516 F.2d at 260. On the other hand, it must be recognized that the financial responsibility of member firms is a subject of vital importance to the protection of individual investors.

**14.** In *McCormick v. Esposito*, the Fifth Circuit upheld the denial of relief in an action alleging violation of NYSE rules 431 and 432 by a securities brokerage firm, but was unwilling to endorse the proposition that violation of those rules will not create a federally cognizable claim. The court merely reaffirmed the position earlier announced in *Gordon, supra*, that no right of action exists under Rules 431 and 432 which "will allow a recovery to investors who know their accounts are inadvertently undermargined, maintain their silence for a substantial period of time, and take no corrective action." 487 F.2d at 1263. A cursory examination of the facts of that case demonstrates that it is easily distinguished from the instant action. Having had the benefit of a trial on the merits, the court found no evidence that the broker therein intentionally ignored the exchange rules or sought to mislead the investor in any way. Furthermore, the investor had reason to know that his account was undermargined, but chose not to complain or take any corrective action prior to the time his account was liquidated. The complaint presently before the Court contains none of these infirmities.

**15.** That is, whether these rules qualify as a "duty created by this chapter" under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.

is available where violations of exchange rules are accompanied by allegations of actual fraud on the investor. *See, e.g., Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442 (2d Cir. 1971); *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith,* 410 F.2d 135 (7th Cir.), *cert. denied,* 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969); *Schonholtz v. American Stock Exchange Inc.,* 376 F.Supp. 1089 (S.D.N. Y.), *aff'd,* 505 F.2d 699 (2d Cir. 1974); *Bush v. Burns Nordeman & Co.,* [1972–1973 Transfer Binder] CCH Fed.Sec.L. Rep. ¶ 93,674 (S.D.N.Y.1972). That is the situation which is presently before the Court. Plaintiff presents contentions which are tantamount to fraud. Until this case is actually tried, it will be impossible to ascertain whether defendants have violated Rules 431 and 462 and, if so, whether under the circumstances the violations justify imposition of liability.

In holding as it does today, the Court does not mean to imply that mere negligence or errors of judgment with respect to maintenance margin requirements will necessarily give rise to federal claims for relief under the securities laws. The securities acts are essentially directed against fraud and the gravamen of plaintiff's complaint is a fraudulent inducement to engage in margin transactions through knowing and willful misrepresentations of the applicable margin requirements.

Finally, defendant Hardy seeks to avoid liability due to its position as a "clearing broker" for plaintiff's transactions. The lone case cited by Hardy in support of this proposition, *Ruszkowski v. Hugh Johnson & Co.,* 302 F.Supp. 1371 (W.D.N.Y.1969) is inapposite. The securities broker-dealer involved therein was a correspondent firm, and its only connection with the plaintiff was that it maintained a special brokerage account in the name of Hugh Johnson & Co., plaintiff's broker, through which transactions for Hugh Johnson & Co. were conducted on a customer-broker basis.

The instant complaint reveals a much more intimate relationship between Evans and Hardy. Hardy actually carried plaintiff's account; extending him credit, executing his purchase orders, submitting reports, analyses and recommendations to him and engaging in such other correspondence with plaintiff as usually accompanies the maintenance of investment accounts. In addition, the complaint charges that Hardy actually participated in the fraud. As discussed above, this states a claim for relief against Hardy.

■ The Court next considers defendants' contention that plaintiff has not pleaded the circumstances constituting the alleged fraud with sufficient particularity, his allegations supposedly consisting of the type of unsupported, conclusory assertions of *scienter* insufficient under *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442 (2d Cir. 1971) and Rule 9(b), Fed.R.Civ.P. The discussion above makes it clear that plaintiff has alleged facts amounting to fraud sufficient to withstand a motion to dismiss.[16] The specific allegations need not be reiterated here.

Inasmuch as plaintiff's federal claim is sustained, defendants' motion to dismiss the state law claims for lack of diversity is denied, jurisdiction being retained based on pendent jurisdiction.

■ The broker-defendants also move to strike plaintiff's demand for exemplary damages. Although punitive damages are not available in a private action for damages due to violation of the federal securities laws, *Globus v. Law Research Service, Inc.,* 418 F.2d 1276 (2d Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); *accord, Hill York Corp. v. American Int'l Franchises, Inc.,* 448 F.2d 680 (5th Cir. 1971); *deHaas v. Empire Petroleum Co.,* 435 F.2d 1223 (10th Cir. 1970), they apparently may be awarded under the pendent state law claims, *see James v. Powell,* 19 N.Y.2d 249, 279 N.Y.S.2d 10, 225

---

**16.** Rule 9 of the Federal Rules of Civil Procedure denotes that general averments of conditions of mind such as knowledge are sufficient.

N.E.2d 741 (1967); *Walker v. Sheldon*, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1962); *Lehman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, (Sup.Ct. New York City, February 23, 1976) in 175 N.Y.L.J. No. 36, p. 7 (1976), in circumstances evincing a "high degree of moral turpitude" or demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations." *Walker, supra* at 405, 223 N.Y.S.2d at 491, 179 N.E.2d at 499. Insofar as the award of such damages depends upon the specific circumstances surrounding the alleged fraud, the Court considers the instant motion premature.

The Exchange moves to dismiss the complaint on the ground that it fails to state a claim against it upon which relief can be granted, and in the alternative it requests that summary judgment be granted in its favor.

 There is no doubt that a national securities exchange may, under Section 6 of the Securities Exchange Act of 1934, 15 U.S.C. § 78f, be liable to customers of member firms for losses suffered by reason of the exchange's failure to enforce its rules. *Rich v. New York Stock Exchange*, 522 F.2d 153 (2d Cir. 1975); *Hochfelder v. Midwest Stock Exchange*, 503 F.2d 364 (7th Cir.), *cert. denied*, 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974); *Butterman v. Walston & Co., Inc.*, 387 F.2d 822 (7th Cir. 1967), *cert. denied*, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968); *Baird v. Franklin*, 141 F.2d 238 (2d Cir.), *cert. denied*, 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944); *Marbury Management, Inc. v. Kohn*, 373 F.Supp. 140 (S.D.N.Y. 1974). This section places a duty of self-regulation on the Exchange, including a duty "to investigate the dealings and the financial conditions of [its] members . . . ." *Baird, supra* at 239, in order "to ensure fair dealing and to protect investors." [17] Failure of the Exchange

to enforce its rules is a violation of this duty and gives rise to a federally cognizable right of action. [18] Although courts should be careful not to hold an exchange to too exacting a duty of supervision, claims are to be measured by what is essentially a negligence standard. *Rich, supra* at 155 n.4. "In order for plaintiffs to succeed in such an action they must be able to prove: (1) that the Exchange had reason to believe or suspect that its member was acting in violation of the rules of the Exchange; (2) that the Exchange thereafter failed to take action; and, (3) that such failure to act resulted in injury to plaintiff." *Marbury, supra* at 143. *See Rich, Hochfelder, Butterman* and *Baird, supra*.

 The complaint in the instant action alleges that sometime during the latter half of 1972 defendant NYSE reviewed plaintiff's margin account and as a result either became aware or should have become aware that the broker defendants were not supervising the account with due diligence, in violation of NYSE Rule 405, and as a result, the proper margin maintenance requirements were not being adhered to and the account was undermargined in violation of Exchange Rule 431. The complaint further alleges that NYSE communicated their concern to the broker defendants but thereafter failed to follow up this warning in order to ascertain whether any remedial or corrective action had been taken.

In response to these contentions and in support of its motion for summary judgment, the Exchange, by affidavit, asserts the following:

1) Through reports required by Exchange rules to be filed by a member organization and on-site visits by Exchange personnel, the NYSE exercises continuing surveillance over its member organizations. [19]

---

**17.** 15 U.S.C. § 78f(d)

**18.** For a discussion of the rationale behind providing a private right of action for an Exchange's breach of its duty of self-regulation, see *Baird v. Franklin*, 141 F.2d 238, 244–45 (2d

Cir.) (Clark, J., concurring in part and dissenting in part), *cert. denied*, 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944).

**19.** Fitzgerald Affidavit ¶ 4.

2) Responsibility for the surveillance of the financial and operational condition of member organizations rests in the Exchange's Member Firm Surveillance Division.[20]

3) The Surveillance Division maintains an Examiners Department that reviews member organizations' answers to financial questionnaires and makes on-site examinations, at least once each calendar year and more frequently as needed, at the member's offices to determine, among other things, whether the organization has procedures enabling it to comply with the Exchange Act and the NYSE rules and regulations.[21]

4) The Exchange's full regulatory program including the above, was applied to the defendant brokers at all times relevant herein and no misconduct or maintenance margin violations with respect to plaintiff's margin account were revealed prior to April 1973, when Exchange examiners, during a regular on-premises visit to Hardy, discovered that the account was undermargined.[22]

5) Prior to this time the Exchange had not learned of nor did it have any reasonable way of learning of any misconduct by Kerbs or Hardy.[23]

6) A similar examination was completed in April or May of 1972. However, this examination likewise failed to reveal any rule violation pertaining to plaintiff's account.[24]

7) The substantial additional margin requirements of Rule 431 were not found applicable to plaintiff's account.[25]

Plaintiff's submissions in opposition to NYSE's motion make it abundantly clear that there exist numerous issues of material fact in the present controversy. Plaintiff does not deny that an examination of plaintiff's Hardy account was completed in April or May of 1972. On the contrary, plaintiff maintains that a properly conducted examination would have reasonably put the Exchange on notice that the substantial additional margin requirements of Rule 431(d) were applicable to certain securities in his account but were not being applied by Hardy. As to this contention plaintiff directs the Court's attention to specific examinations and reports, admittedly within the knowledge of the defendant Exchange, which reasonably should have made it aware of the alleged rule violations.

These facts distinguish the case at bar from both *Hochfelder* and *Butterman, supra,* wherein summary judgments were granted in favor of the defendant securities exchanges. In those cases it appeared that the exchanges had no knowledge of the alleged illegal conduct, nor was there any practical way to obtain such knowledge prior to its being called to their attention.

▪ That the additional margin requirements were in fact applicable to plaintiff's account is suggested by a memo, the last paragraph of which is reproduced in the margin,[26] prepared by the Exchange's own Department of Enforcement. Furthermore, monthly reports concerned specifically with plaintiff's margin account and submitted to the NYSE identified that account as a "problem account" as early as April of 1972.[27] This puts in issue the applicabili-

---

20. Fitzgerald Affidavit ¶ 4.

21. Fitzgerald Affidavit ¶ 5.

22. Fitzgerald Affidavit ¶¶ 9, 10.

23. Fitzgerald Affidavit ¶ 10.

24. Senkewich Affidavit ¶ 2.

25. Fitzgerald Affidavit ¶ 12.

26. One of the reasons given by the firm for its failure to liquidate the account was that the markets for the securities were illiquid and unable to absorb a quantity of stock. The Firm would have avoided this if it had complied with Rule 431(d)(1), which required substantial additional margin under these circumstances.

Exhibit E to plaintiff's affidavit filed March 24, 1975.

27. Letter from Benjamin Wetzler of Hardy & Co. to John Kerbs of Kerbs and Company, June 19, 1972; letter from Bernard Graham of Hardy to Edward Baer, Special Counsel, New York Stock Exchange Enforcement Section, July 23, 1974.

ty of Rule 431(d), notwithstanding the Exchange's asserted finding of inapplicability.[28]

Accordingly, the following issues remain in controversy between the litigants herein: (1) were the substantial additional margin requirements of Rule 431 applicable to plaintiff's Hardy account, and, if so, (2) when did the defendant NYSE acquire knowledge sufficient to put it on notice of Hardy's violation of that rule, and (3) did the NYSE thereafter proceed with the requisite due care in enforcing its maintenance margin rules?

In that summary judgment is a drastic remedy to be used only in limited circumstances, *United States v. Bosurgi*, 530 F.2d 1105 at 1110, No. 75–6013 (2d Cir., 1976), we conclude that the Exchange has not adequately demonstrated the absence of a genuine issue of material fact. In consequence thereof, its motion for summary judgment must be denied. *Bosurgi, supra; Jaroslawicz v. Seedman*, 528 F.2d 727 (2d Cir., 1975); *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317 (2d Cir. 1975).

## CONCLUSION

The complaint presently before the Court states a claim under the federal securities laws against all defendants. The Court further finds that a trial must be had to determine the exact nature of the broker defendants' conduct and liability, making their motion to strike plaintiff's prayer for exemplary damages premature. Insofar as genuine issues of material fact are present in the case, the Exchange's alternative motion for summary judgment is likewise denied.

It is SO ORDERED.

**28.** Although an exchange must be accorded a broad discretion in the interpretation and application of its rules, *Gordon v. New York Stock Exchange*, 498 F.2d 1303, 1306 (2d Cir. 1974), *aff'd*, 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975); *Intercontinental Industries, Inc. v. American Stock Exchange*, 452 F.2d 935, 940 (5th Cir. 1971), *cert. denied*, 409 U.S. 842, 93 S.Ct. 41, 34 L.Ed.2d 81 (1972), this discretion is not absolute. The assertion that the additional margin requirements of Rule 431 were not found applicable to plaintiff's holdings is insufficient to demonstrate the lack of a triable issue of fact absent facts which substantiate the determination.