**Thomas B. NEILL and Kaye L. Neill, Plaintiffs,**

v.

**DAVID A. NOYES & COMPANY, a partnership, and Allen M. Grigg, Defendants.**

No. 76 C 48.

United States District Court, N. D. Illinois, E. D.

July 21, 1976.

fendants in the sale of securities owned by the Plaintiffs. The Defendants have moved to dismiss the lawsuit on the basis that the claims presented by the Plaintiffs are not valid. For the following reasons, that motion must be denied.

For a number of years prior to the instigation of this lawsuit, the Plaintiffs maintained a margin account with the Defendant Noyes & Company. A margin account, of course, requires that its owner keep a certain amount of equity in that account at all times. In the spring of 1975, Defendant Grigg gave advice to the Plaintiffs which allegedly resulted in the sale of shares of the National Semiconductor Corporation (NSM). The complaint claims that these sales then resulted in the account of the Plaintiffs becoming undermargined, with a resultant loss falling upon the Plaintiffs. The complaint further alleges that the Defendant Grigg told the Neills that it would not be necessary for them to deposit additional margin in order to carry out these transactions. The Plaintiffs claim that specific instructions were given to Mr. Grigg to check with the Margin Clerk at Noyes & Company before the consummation of any transaction, to be sure that no additional money or securities would have to be deposited in the account to meet the margin requirements. Despite these precautions, the Plaintiffs charge that their account did become undermargined, and furthermore, the Defendants failed to liquidate the account within the time-limits prescribed. Consequently, the Plaintiffs claim that they suffered a monetary loss.

Dan Brusslan of Fischel, Kahn, Weinberg & Brusslan, Chicago, Ill., for plaintiffs.

Samuel S. Berger and Warren Krinsky, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

AUSTIN, District Judge.

This litigation involves alleged violations of certain margin requirements by the De-

## DISCUSSION

Section 7 of the Securities and Exchange Act of 1934 (15 U.S.C. § 78g) authorizes the Board of Governors of the Federal Reserve System to promulgate regulations governing margin requirements. This authorization resulted in Regulation T, which the Defendants in this action allegedly violated. Regulation T is violated when there is insufficient excess credit in an account to properly margin a particular transaction,

and the broker-dealer fails to either receive an additional cash deposit or to liquidate a sufficient number of securities to bring the margin up to the required level within a specified number of days following the transaction. *See* 12 C.F.R. 220.3(b), (e).

The imposition of civil liability for violations of regulations such as Regulation T has been accepted by a number of the nation's courts. As one court stated: "The recent cases have been uniform in recognizing civil liability for violation of the margin requirements of Regulation T." *Avery v. Merrill Lynch, Pierce, Fenner & Smith*, 328 F.Supp. 677 (D.C.D.C.1971). *See also,* Note, *Federal Margin Requirements as a Basis for Civil Liability*, 66 Colum.L.Rev. 1462 (1966). When the Congress enacted the Securities and Exchange Act of 1934, it is clear that it intended to accomplish several objectives, including the protection of the small investor from the dangers of excessive trading on credit. *See, e. g., Landry v. Hemphill, Noyes & Company*, 473 F.2d 365, 370 (1st Cir. 1973). It is my opinion that this purpose of the Congress is best served by allowing a private cause of action in situations like that alleged by the Plaintiffs here.

In coming to this conclusion, I am accepting the so-called "Pearlstein Doctrine" as put forth by the Second Circuit in *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2d Cir. 1970), *cert. denied,* 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971). In that decision, the Second Circuit determined that it was desirable to allow private suits for violations of federal margin regulations because such lawsuits served to protect the small investor. Judge Waterman, writing for the majority, felt that the threat of this type of lawsuit would motivate brokers to observe margin requirements more closely. The desirability of such a goal was clearly indicated by that court:

> In our view, the danger of permitting a windfall to an unscrupulous investor is outweighed by the salutary policing effect which the threat of private suits for compensatory damages can have upon brokers and dealers above and beyond the threats of governmental action . . . (*Supra* at 1141).

Despite some recent changes in § 7, it is my opinion that the *Pearlstein* doctrine remains viable. In fact, the Second Circuit has not invalidated it, although that court had the opportunity to do so only last year. *Pearlstein v. Scudder & German*, 527 F.2d 1141, 1145 n. 3 (2d Cir. 1975). *See also,* Comment, *Civil Liability for Margin Violations—The Effect of Section 7(f) and Regulation X,* 43 *Fordham L.Rev.* 93 (1974). Innocent investors, or those alleged to have been defrauded by their brokers, continue to possess a valid cause of action for violation of margin requirements. The overall purposes of the Securities and Exchange Act of 1934 are best met by allowing this type of cause of action to continue. *See Spoon v. Walston & Company, Inc.,* 478 F.2d 246 (6th Cir. 1973); *Jennings v. Boenning & Company,* 388 F.Supp. 1294 (E.D.Pa.1975).

The Defendants point to several cases which rejected the Pearlstein doctrine as being unsound. I have chosen not to follow those decisions because they are distinguishable from the case presently at bar. The Plaintiffs in this case allege fraud on the part of the broker and there is no indication from the record before me that the Plaintiffs were anything other than innocent customers of the broker-defendant. Cases such as *Goldman v. Bank of Commonwealth,* 467 F.2d 439 (6th Cir. 1972), cited by the Defendants as flatly rejecting *Pearlstein,* cannot be read in such an absolute light. The factual pattern in *Goldman,* and other cases like it, usually involved a plaintiff who was anything but innocent, whereas the Plaintiffs here have not yet been shown to be unscrupulous investors taking advantage of a slight clerical error on the part of the broker. For these reasons, the case presently at bar is distinguishable from most of those cases which do not fully accept the *Pearlstein* rationale.

The Plaintiffs further claim that alleged violations of the rules of the New York Stock Exchange, the American Stock Exchange, and the National Association of Securities Dealers result in the creation of a

private right of action. All of these rules were promulgated pursuant to authority granted to either the stock exchanges or the dealers' association by the various sections of the Securities and Exchange Act of 1934.

In determining whether or not an implied federal civil liability exists for violations of these rules, it is best to apply a case-by-case approach, examining all relevant factors to decide if the Congress intended the courts to imply this right under these circumstances. *Colonial Realty Corp. v. Bache & Company*, 358 F.2d 178 (2d Cir. 1966). Having conducted the appropriate analysis, I conclude that the Plaintiffs possess a potential cause of action based upon both the exchanges' rules and those established by the dealers' association. The rules of the New York Stock Exchange, and those of the nation's other stock exchanges as well, are integral parts of the regulation of the securities industry; Rule 402, allegedly violated by the Defendants here, was designed to protect the investing public and, therefore, a private cause of action is consistent with this purpose. *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith*, 410 F.2d 135 (7th Cir. 1969), *cert. denied*, 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d. 88 (1969). *See also*, Note, *Private Actions as a Remedy for Violations of Security Exchange Rules*, 83 Harv.L.Rev. 825 (1970).

The margin requirements of Rule 431 are likewise actionable, especially in situations where the alleged rule violation is accompanied by allegations of fraud perpetrated upon the investor by the broker. *Evans v. Kerbs & Company*, 411 F.Supp. 616 (S.D.N.Y.1976). An analysis of Rule 431, and its counterpart from the American Stock Exchange, reveals that protection of the broker is not the sole purpose for their existence. But rather, protection of the investor is also a factor to be considered. *Cf. Daley v. Capitol Bank & Trust Company*, 506 F.2d 1375 (1st Cir. 1974). In appropriate circumstances, where the broker's customer has not allowed trading to continue in an account known to be undermargined, I believe a private cause of action should be available for violations of Rule 431. It is true that some courts have determined that no privately enforceable claim is available for violation of exchange margin rules. However, most of those cases, such as *McCormick v. Esposito*, 500 F.2d 620 (5th Cir. 1974), *cert. denied*, 420 U.S. 912, 95 S.Ct. 834, 42 L.Ed.2d 842 (1975), and *Gordon v. duPont Glore Forgan, Inc.*, 487 F.2d 1260 (5th Cir. 1973), *cert. denied*, 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 666 (1974), are easily distinguishable from the case before me at this time. Here, the Plaintiffs have not been shown to have possessed any knowledge of the lack of adequate margin in their account. Until a trial is held to determine the circumstances surrounding the allegedly fraudulent actions of the Defendants, I cannot view cases such as *McCormick* or *Gordon* as controlling.

The alleged violation of the rules promulgated by the National Association of Securities Dealers is also actionable as long as these rules serve to protect the investing public. *S. E. C. v. 1st Securities Company of Chicago*, 463 F.2d 981 (7th Cir. 1972), *cert. denied*, 409 U.S. 880, 93 S.Ct. 85, 34 L.Ed.2d 134 (1973). *See also*, Note, *Civil Liability for Violation of NASD Rules: S. E. C. v. First Securities Company*, 121 U.Pa. L.Rev. 388 (1972). One of the rules allegedly violated here requires that the broker-dealer act in a just and equitable way toward his customers. In addition, a "know your customer" rule of the association was also allegedly violated by the conduct of the Defendants. Plainly, these rules are of the type which are designed to protect the general investing public. Consequently, there is a cause of action under the standard enunciated by the Seventh Circuit in *1st Securities*.

The Plaintiffs next allege that the actions of the Defendants constituted violations of § 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78[j]) and Rule 10b–5, established by the Securities and Exchange Commission under that statutory authority. The Defendants argue vigorously that the recent case of *Ernst & Ernst v. Hochfelder*, —— U.S. ——, 96

S.Ct. 1375, 47 L.Ed.2d 668, 44 U.S.L.W. 4451 (1976), serves to block any cause of action in this situation.

I do not feel that the *Ernst & Ernst* decision bars the claims presented by the Plaintiffs here. That case stands for the proposition that a private cause of action will not lie under § 10(b) and Rule 10b–5 in the absence of any allegation of "scienter." Scienter was defined as being a mental state embracing an intent to deceive, manipulate, or defraud. *See also*, Bucklo, *Scienter and Rule 10b–5*, 67 Nw.U.L.Rev. 562 (1972). The case before this court is distinguishable from the *Ernst & Ernst* decision simply because the Plaintiffs have alleged fraudulent and deceptive conduct of the part of the Defendants. The facts set forth in the complaint, while not overly detailed, are sufficient to support these allegations and comply with the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Of course, in order for the Plaintiffs to be ultimately successful on the merits before this court, they must more fully develop these facts at trial. But since the Plaintiffs did allege some form of scienter beyond mere negligence, they have avoided the impact of *Ernst & Ernst.*

The case of *Shemtob v. Shearson, Hammill & Company, Inc.*, 448 F.2d 442 (2d Cir. 1971), also relied upon by the Defendants, is likewise distinguishable. That case did not contain any allegations of scienter or fraud, while in this case, the Neills specifically alleged that the plans and schemes of the Defendants operated as a fraud upon the Plaintiffs and constituted a manipulative device, the purpose of which was to induce the Plaintiffs to engage in the transactions which may have violated the margin requirements. Such allegations are more than merely conclusory in nature.

Finally, the complaint contains allegations pertaining to common law fraud and breach of a fiduciary duty. These two counts will also be decided by this court through the exercise of its pendent jurisdiction. A common nucleus of operative facts is present here, and consequently, these matters should be disposed of in one proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Bowman v. Hartig*, 334 F.Supp. 1323 (S.D.N.Y.1971).

## CONCLUSION

By ruling in this manner, I do not mean to imply that a merely negligent violation of the margin requirements imposed by law will result in viable federal claims under the securities statutes. The allegations of fraudulent conduct on the part of the Defendants brings the securities laws into play here because those statutes are aimed primarily at the eradication of fraudulent conduct on the part of those in the securities industry. *See also, Evans v. Kerbs & Company, supra* at 624.

For the above stated reasons, the Defendants' motion to dismiss is denied.

It is so ordered.