Mahmoud **FUSTOK**, Plaintiff,

v.

**CONTICOMMODITY SERVICES, INC.,** Conticapital Management, Inc., Continental Grain Company, Walter M. Goldschmidt, Norton Waltuch, Tom Waldeck and Ivan Auer, Defendant.

**No. 82 Civ. 1538(MEL).**

United States District Court, S.D. New York.

June 10, 1985.

---

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for plaintiff; Eliot Lauer, Herbert Stoller, Turner Smith, New York City, of council.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Conti-Commodity Services, Inc., ContiCapital Management, Inc., Norton Waltuch, Tom Waldeck and Ivan Auer; Arthur L. Liman, Mark H. Alcott, Cameron Clark, Richard A. Rosen, Eric M. Freedman, New York City, of council.

Proskauer, Rose, Goetz & Mendelsohn, New York City, N.Y., for defendant Continental Grain Co.; David I. Goldblatt, Francis D. Landrey, New York City, of council.

Parker, Auspitz, Nessemann & Delehanty, New York City, for defendant Walter M. Goldschmidt; Jack C. Auspitz, Hollis L. Hyans, New York City, of council.

LASKER, District Judge.

In an earlier opinion, defendants' motion for summary judgment to dismiss the original complaint was denied due to the presence of triable issues of fact. *See Fustok v. ContiCommodity Services, Inc.,* 577 F.Supp. 852, 854–59 (S.D.N.Y.1984). Plaintiff has since amended his complaint by adding to the unauthorized trading and conversion claims against the defendants (amended claims 1–3, hereinafter referred to as the "original claims") claims based, *inter alia,* upon the fraudulent allocation of various silver contracts to plaintiff's commodity trading account (amended claims 4–23). *See id.,* 103 F.R.D. 601, 602 (S.D.N.Y.1984).

Defendants now move, pursuant to Federal Rules of Civil Procedure 11, 37 and 56(g), and the inherent power of this Court, to dismiss the complaint and to obtain an award of attorney's fees and costs on the ground that newly discovered evidence establishes that plaintiff has perjured himself in this action. In the alternative, defendants urge that we reconsider the earlier decision denying their motion for summary judgment. Plaintiff contends that the motion is groundless and that he should be awarded attorney's fees and costs for defending the motion. For the reasons set forth below, that portion of defendants' motion seeking to dismiss the original claims is granted and the remaining portions of the motion is denied.

I.

The facts giving rise to this action are set forth in detail in the earlier opinion. *See id.,* 577 F.Supp. at 853–55. Mahmoud Fustok, a citizen of Saudi Arabia has brought this action for more than $50 million in damages allegedly arising out of the collapse of the market for silver in the Spring of 1980. In June of 1978, Fustok executed a mandate authorizing Advicorp Advisory and Financial Corporation, S.A. ("Advicorp"), a Swiss investment advisory company established by, among others, Antoine Asfour, to direct the investment of funds which were held in Fustok's account at Banque Populaire Suisse ("BPS"). *See id.* at 854. In August of 1979 Fustok instructed Advicorp to purchase silver for his BPS account. Fustok asserts that he limited Advicorp's authority to the purchasing of only $30 to $40 million of physical silver, as opposed to futures contracts. *See id.* at 854–55, 857.[1]

---

1. Fustok's affidavit submitted in opposition to defendants' original summary judgment motion states: "In August 1979, I instructed Advicorp to purchase between $30 and $40 million worth of silver for my BPS account. Thereafter, I deposited additional funds with BPS for that purpose." Affidavit of Mahmoud Fustok, dated Mar. 25, 1983, ¶ 4, *reprinted in,* Defendants' Notice of Motion, filed Jan. 25, 1985, at Exhibit R (defendants' exhibits submitted in connection with this motion will be referred to as "Exhibit ..."). In evaluating defendants' current motion, we have reviewed Fustok's deposition taken in June of 1982 and also note that Fustok

To accomplish its task, Advicorp arranged for Fustok to sign, at its request, papers establishing an account in his own name with defendant ContiCommodity Services, Inc. ("Conti"), a registered commodities broker. The account is known as the "055 account." *See id.* at 854 & n. 5.[2] There is no dispute that trading activity in the 055 account involved trading of futures exceeding the $30 to $40 million of physical silver purchases which Fustok allegedly authorized. Tens of millions of dollars of silver futures contracts were purchased for the 055 account, and on March 26, 1980 the account held open futures contracts and silver depositary receipts representing more than five million ounces of silver at a time when the market price for silver was in excess of fifteen dollars per ounce. *See id.* at 854; *In re Hunt,* CFTC Docket No. 85–12, Complaint at ¶ 108 (C.F.T.C. Feb. 28, 1985) (complaint of the United States Commodities Futures Trading Commission).

Fustok has asserted throughout this litigation that the 055 trades were unauthorized both because he did not authorize trading in the 055 account and because he authorized Advicorp to make only $30 to $40 million of physical silver purchases. The earlier opinion concluded, after drawing all reasonable inferences in favor of Fustok, that a question of fact existed as to whether the defendants, who at that time consisted of Conti and a number of its officers, were aware of limits on Advicorp's authority to buy silver and chose to ignore them and of the extent of Advicorp's authority. *See Fustok v. ContiCommodity Services, Inc., supra,* 577 F.Supp. at 857–58. Underlying that conclusion was the fact that while the parties agreed that Fustok authorized Advicorp to purchase $30 to $40 million worth of silver, they disputed the scope of Advicorp's authority to purchase silver for Fustok, and the degree of

the defendants' knowledge. *See id.* at 854, 857.

In support of their earlier summary judgment motion, defendants relied upon testimony by Fustok and a number of documents to show that Fustok had in fact authorized trading in silver in excess of the $30 to $40 million figure and that this authorization was not limited to purchases of physical silver but also included trading in silver futures contracts. One group of documents of particular significance to defendants' position was a series of applications signed by Fustok for three letters of credit totaling $115 million which name Conti as a beneficiary. Two of the applications, representing a combined sum of $95 million, state that the letters of credit are for the purpose of buying silver futures contracts. On the earlier motion, Fustok argued that the applications were irrelevant because they did not indicate that Fustok gave Advicorp, or anyone, the authority to trade the 055 account. In addition, Fustok testified at his June, 1982 deposition that these letters of credit had been intended to facilitate purchases of $30 to $40 million of physical silver. *See, e.g.,* Fustok Deposition at 287–354. Because on a motion for summary judgment inferences are to be drawn and ambiguities resolved in favor of the party opposing the motion, defendants' motion was denied.

## II.

Defendants now move to dismiss the complaint based upon newly-discovered documents not available to them at the time of their original summary judgment motion which, they assert, reveal that Fustok did authorize Advicorp to trade silver futures worth hundreds of millions of dollars. Defendants contend that the documents prove that Fustok has perjured himself in this action by claiming that he limited Advicorp's authority to purchasing

---

maintained that Advicorp's authority was limited to the $30 to $40 million of physical silver purchases. *See, e.g.,* Fustok Deposition Transcript at 20, 125, 171, 214, 218, 260, 328, 375, 379–80, and 396 (hereinafter "Fustok Deposition").

**2.** Before the 055 account was opened, Advicorp made silver purchases for Fustok through omnibus accounts which BPS opened in its own name with Conti and other futures commission merchants for the benefit of various BPS customers, including Fustok. *See id.* at 854.

only physical silver worth $30 to $40 million. The gravity of defendants' perjury charge and the implication of granting defendants summary judgment in an action of the scope of this one have led us to review closely the materials underlying defendants' original summary judgment motion as well as the documents presented in support of this motion.

■ The most revealing document presented by the defendants on the current motion is a letter dated October 16, 1979 from Advicorp to Fustok detailing Fustok's position in the silver market as of that date (Exhibit A). The letter describes Fustok as the owner of silver futures contracts with a combined purchase price of nearly $325 million dollars, and includes a summary sheet showing Conti as the broker for more than 3,500 silver futures contracts purchased by Fustok. In addition, and of particular note, is the fact that the letter is counter signed by Fustok under the heading "Read and approved."

The defendants contend that this letter, and a number of other documents discussed below, prove that Fustok testified falsely when he asserted that he never authorized Advicorp to purchase more than $30 to $40 million of physical silver. Fustok argues that the letter is dated one month before the 055 account was opened, that it does not authorize Advicorp to trade the 055 account, and that the issue relating to the scope of Advicorp's authorization to buy and sell silver on Fustok's behalf is a question of fact for a jury to decide.[3]

We find that the October 16, 1979 letter from Advicorp to Fustok, which Fustok signed as read and approved, establishes as a matter of law that Fustok authorized Advicorp to trade silver futures contracts worth hundreds of millions of dollars, that he was aware of such authorization and that defendants are accordingly entitled to summary judgment dismissing the claims which allege unauthorized trading. The earlier opinion, in denying defendants' original summary judgment motion, accepted Fustok's argument that the defendants were aware that Fustok was not personally receiving Conti confirmation slips showing the magnitude of silver futures trading in the 055 account, and that defendants knew or had reason to know that Advicorp's trading was unauthorized. *See Fustok v. ContiCommodity Services, Inc., supra,* 577 F.Supp. at 857.[4] However, Fustok's signature on the Advicorp letter reveals that he was personally aware of his enormous stake in the silver market.

It is not claimed that Fustok was not competent to sign Exhibit A. Accordingly his knowing execution of that exhibit renders him chargeable with knowledge of its contents and overcomes his argument that he limited Advicorp's authority to trade on his account to physical silver in an amount between $30 and $40 million.

> It has often been held that when a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations. He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them....

*Metzger v. Aetna Insurance Co.,* 227 N.Y. 411, 416, 125 N.E. 814, 816 (1920).

Fustok does not challenge the authenticity of the Advicorp letter or his approval signature. Fustok's sole defense to the

---

**3.** Fustok has also submitted a six-paragraph affidavit in opposition to defendants' motion which states in relevant part: "I reaffirm that I did not authorize Advicorp to engage in transactions in the 055 account and that I was unaware of any transactions made in that account until late March 1980." Affidavit of Mahmoud Fustok, filed Mar. 5, 1985, ¶ 5.

**4.** The earlier opinion further noted that Fustok claims he never saw the confirmations that were mailed to the London address he designated in his agreement with Conti opening the 055 account and that Conti mailed them to his London office knowing that Asfour would intercept the confirmations and conceal them from Fustok. *See id.* at 855–56.

letter, that he did not authorize anyone to trade the 055 account, is insufficient. The complaint's unauthorized trading claims do not depend upon whether Fustok authorized Advicorp to execute trades for his Conti account, but upon whether Fustok limited Advicorp's trading authority to only $30 to $40 million of physical silver. Fustok's signature on the Advicorp letter eliminates any basis for deciding this question in his favor. Accordingly, the letter alone justifies granting defendants' motion for summary judgment to dismiss the first three claims of the amended complaint.

### III.

While the Advicorp letter alone is sufficient to dismiss Fustok's unauthorized trading claims, the cumulative weight and convincing nature of the additional materials submitted by the defendants in support of this motion, and Fustok's failure to present any evidence beyond his conclusory assertions that he did not authorize silver trading in his behalf in excess of $30 to $40 million, establish further support for dismissal of the original claims. These documents, which are appended as exhibits to defendants' motion, include: forms signed by Fustok granting Asfour authority to trade commodities on margin (Exhibits B & C); documents which establish Fustok's holding of $1.1 billion in silver futures contracts in February of 1980 (Exhibit D) and more than $120 million in open silver futures contracts in September of 1979 (Exhibit E); mandates signed by Fustok or Asfour which gave Advicorp "powers of attorney" to manage Fustok assets in addition to other powers of attorney considered in connection with the original motion for summary judgment (Exhibits F, M. & Q); and a letter from Swiss Bank Corporation extending the credit line limit from $50 million to $80 million for one of the letters of credit applications discussed *supra* (Exhibit G).

Fustok argues that none of the documents show that he specifically delegated authority to anyone to trade the 055 account. The materials nonetheless provide further convincing evidence that Fustok authorized Advicorp to engage in silver futures transactions in amounts far greater than $30 to $40 million, and Fustok has not met this argument other than through his conclusory assertions that he limited Advicorp's authority to purchasing $30 to $40 million of physical silver. *See* notes 1 and 3 *supra*.

As the Court of Appeals for this Circuit has explained:

> [P]roperly employed, summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation.... Thus, the mere possibility that a factual dispute *may* exist, without more, is not sufficient to overcome a convincing presentation by the moving party.... The litigant opposing summary judgment, therefore, 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978). Rather, he must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful.

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (citations omitted) (emphasis in original); *see also Ansam Associates, Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985); *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983); *In Re B.D. International Discount Corp.*, 701 F.2d 1071, 1077 n. 11 (2d Cir.) (Friendly, J.), *cert. denied*, —— U.S. ——, 104 S.Ct. 108, 78 L.Ed.2d 110 (1983); *IBM Poughkeepsie Employees Federal Credit Union v. Cumis Insurance Society*, 590 F.Supp. 769, 772 (S.D.N.Y. 1984).

Perhaps each of the additional items submitted by the defendants, if viewed individually without reference to each other, might support the argument that a fact question existed as to the scope of Advicorp's authority. However the cumulative weight of the additional evidence presented convincingly establishes that Advicorp possessed silver trading authority considerably

greater than the $30 to $40 million claimed by Fustok in his conclusory affidavits. Fustok was not buying a toaster on credit but was engaged in sophisticated commodities transactions in daily amounts of tens of millions of dollars. He entered into an arm's length commercial relationship with Advicorp "which warranted the exercise of care by [Fustok] before his entry into it and his conduct with regard to this undertaking can only be regarded as negligent, the consequences of which he must now bear." *Gaskin v. Stumm Handel Gmbh,* 390 F.Supp. 361, 367 (S.D.N.Y.1975). In the circumstances an investor in Fustok's position is liable whether or not he understood the meaning of various documents he signed. Defendants' motion for summary judgment to dismiss the original claims of the amended complaint is granted.

■ Defendants' motion to dismiss the remainder of the complaint on the ground that Fustok has given perjurious testimony in this action, and for attorney's fees is denied. The question of whether Fustok knowingly testified falsely necessarily involves subjective issues regarding his state of mind, motive, sincerity, and conscience. An award of summary judgment under such circumstances is, as the Court of Appeals has noted, particularly inappropriate and a trial on such issues would be necessary. *See Patrick v. Le Fevre,* 745 F.2d 153, 159 (2d Cir.1984) and cases cited therein; *see also Lord Jeff Knitting Co. v. Warnaco, Inc.,* 594 F.Supp. 579, 582 (S.D.N.Y.1984).

In sum, defendant's motion for summary judgment to dismiss the amended complaint's first three claims is granted. The remainder of defendant's motion is denied.

It is so ordered.