**Mahmoud FUSTOK, Plaintiff,**

v.

**CONTICOMMODITY SERVICES, INC., Conticapital Management, Inc., Continental Grain Company, Walter M. Goldschmidt, Norton Waltuch, Tom Waldeck and Ivan Auer, Defendants.**

**No. 82 Civ. 1538(MEL).**

United States District Court, S.D. New York.

Sept. 20, 1985.

---

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for plaintiff; Herbert Stoller, Kevin R. Kopelson, New York City, of counsel.

Sidley & Austin, New York City, for defendant Continental Grain Co.; Marc J. Gottridge, New York City, Lawrence H. Hunt, Jr., David T. Pritikin, Sidley & Austin, Chicago, Ill., Sheldon L. Berens, Gen. Counsel, Continental Grain Co., New York City, of counsel.

Parker Auspitz Neesemann & Delehanty P.C., New York City, for defendant Walter M. Goldschmidt; Jack C. Auspitz, Hollis L. Hyans, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Conti-Commodity Services, Inc., Tom Waldeck, Ivan Auer, and ContiCapital Management, Inc.; Mark H. Alcott, Cameron Clark, Richard A. Rosen, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Norton Waltuch; Steven J. Glassman, New York City, of counsel.

LASKER, District Judge.

In the current round of submissions in this litigation the defendants collectively attack the legal sufficiency of the fourth, fifth, eighth, ninth, twelfth through twentieth and twenty-third claims in Fustok's Amended Complaint. Subsequent to the filing of this "omnibus motion" Fustok filed a Second Amended Complaint which alleges in identical form the claims under siege here. Accordingly, we treat the defendants' motion as if it were addressed to the claims in the Second Amended Complaint.

The defendants move (1) to dismiss pursuant to Rule 12(b), Fed.R.Civ.P., the seventeenth through twentieth claims for failure to state a cause of action; (2) for summary judgment dismissing claims thir-

teen through sixteen pursuant to Federal Rule of Civil Procedure 56(b), and in the alternative (3) to dismiss the fourteenth and fifteenth claims for failure to state a claim; (4) to dismiss the eighth, twelfth and sixteenth claims for failure to state a claim under Illinois law; (5) to dismiss the twenty-third claim as barred by the statute of limitations; and (6) to dismiss the fourth, fifth, eighth, ninth, twelfth, thirteenth and sixteenth claims for failure to plead essential elements of fraud and/or for failing to comply with Federal Rule of Civil Procedure 9(b).

For the reasons set forth below the motion is denied.

## I.

The seventeenth and eighteenth claims are based upon the March 4, 1980 purchase of 100 Comex silver contracts for Fustok's account. Fustok asserts that "under the rules of the Comex then in effect, the 100 May Comex silver contracts should not have been purchased for Account No. 38055 on March 4, 1980 unless there was margin of at least $4 million (i.e. $40,000 per contract) then in or in transit to that account." Second Amended Complaint at ¶ 77. The plaintiff asserts that the defendants purchased the contracts without sufficient equity in, or in transit to, Fustok's account and in so doing breached the fiduciary duty owed to plaintiff (seventeenth claim) and were negligent (eighteenth claim).

The nineteenth and twentieth claims are pleaded in the alternative to claims seventeen and eighteen, respectively. The claims allege that the defendants purchased 40 silver contracts on the London Metals Exchange ("LME") on February 29, 1980, and 90 LME silver contracts on March 5 and 7, 1980 and that the contracts "were unsupported by any equity or other margin." Second Amended Complaint at ¶¶ 84, 85. Fustok asserts that the transactions were made in breach of the defendants' fiduciary obligations (nineteenth claim) and that the defendants' conduct was negligent (twentieth claim).

The defendants move to dismiss the seventeenth through twentieth claims for failure to state a cause of action on the ground that a broker's violation of the Comex margin requirements, standing alone, does not give rise to a cause of action in the customer's favor. Fustok does not directly respond to this proposition. Instead, he argues that a cognizable claim exists where margin violations are alleged in the context of a scheme to defraud. He asserts, moreover, that the allegations state valid common law claims for negligence and breach of fiduciary duty.

The defendants respond that the decisions upon which Fustok relies are inapplicable because they involve violations of securities margin rules which are "drastically different" than in the commodities industry, and that, in any event, the seventeenth through twentieth claims should be dismissed because they are duplicative of Fustok's first and second claims for unauthorized trading and fraud.

Inasmuch as Fustok apparently concedes, or at least does not discuss whether, absent fraud or bad faith, a violation of the margin requirements gives rise to a cause of action, the focus of the inquiry here is not on the various functions of margin rules in the commodities industry versus the securities industry. The issue is whether the claims support a cause of action for commodities fraud. *Cf. Evans v. Kerbs and Co.*, 411 F.Supp. 616, 624 (S.D. N.Y.1976) ("The securities acts are essentially directed against fraud and the gravamen of plaintiff's complaint is a fraudulent inducement to engage in margin transactions through knowing and willful misrepresentations of the applicable margin requirements.")[1] In making such an inquiry

---

1. Very recently, in *Bennett v. United States Trust Company of New York*, 770 F.2d 308 (2d Cir. 1985), the Second Circuit held there is no private right of action under Regulation U or under Section 7 of the Securities Exchange Act of 1934 (dealing with margin requirements). Although *Evans* cites *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2d Cir.1970), *cert. denied,*

courts frequently look to the securities laws and related decisions for guidance, and there is merit in this approach. *See Leist v. Simplot*, 638 F.2d 283, 298 n. 14 (2d Cir.1980), *aff'd sub nom. Merrill Lynch Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) ("While there are differences between the commodities and securities fields, what is relevant to the present question is the common legislative objective of insuring fair dealing for investors on what are important public markets, and the common legislative approach to attaining this objective.")

An investor has a private right of action for commodities fraud. *See, e.g., id.* Although the courts continue to wrestle with the task of defining what behavior will support this type of claim, it is evident that a broker's failure to obey margin requirements may form part of a fraudulent commodities scheme. Moreover, the law appears to support the proposition that such conduct is actionable if it is properly pleaded. For example, in *Klein v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, [1978 Transfer Binder] FED.SEC.L.REP. (CCH) ¶ 96,523 (E.D.N.Y.1978), the court read the complaint as alleging that "[p]laintiffs ... were injured by defendant's fraudulent and manipulative purchases and sales of call options for plaintiffs' respective accounts and by various intentional and wrongful acts which culminated in the liquidation of plaintiffs' margin accounts," and concluded that it was unnecessary to decide whether there was a right of action based upon a failure to comply with margin rules because the margin violations were part of a claim for fraud which was pleaded in compliance with Rule 9(b). *Id.* at 94,054. *See also Evans v. Kerbs and Co.*, 411 F.Supp. at 624; *cf. Friedman v. Dean, Witter & Co.*, [1980–82 Transfer Binder] COMM.FUT.L.REP. (CCH) ¶ 21,307 (CFTC Nov. 13, 1981) (distinguishing between mere violations of margin rules and regulations and margin violations committed in bad faith or in furtherance of fraud).

■ Here, however, the pleadings of the seventeenth through twentieth claims are woefully inadequate to make out a claim for fraud. The claims allege simply that the defendants purchased certain silver contracts that should not have been purchased because there was inadequate margin or other equity in Fustok's account. Even under the most liberal reading of the complaint such allegations do not amount to fraud. It follows that the claims fall short of compliance with the specificity required by Federal Rule of Civil Procedure 9(b). *See generally Minpeco, S.A. v. ContiCommodity Services, Inc.*, 552 F.Supp. 332, 338–39 (S.D.N.Y.1982) (requirements of Rule 9(b)).

Accordingly, if the sole basis for the seventeenth through twentieth claims were an alleged private right of action under the commodities regulations, dismissal of the claim would be compelled, for the reasons set forth above. However, Fustok asserts that his allegations give rise to common law claims for negligence and breach of fiduciary duty. The defendants' one-sentence response is that "[m]argin violations were of course unknown to the common law," quoting *Hornblower & Weeks-Hemphill, Noyes v. Burchfield*, 366 F.Supp. 1364, 1367 (S.D.N.Y.1973) (Lasker, J.).

*Hornblower* is not relevant here inasmuch as the counterclaims at issue in that case were all based on statutory violations rather than on liability arising under the common law. Here, even if statutory margin requirements did not exist, Fustok could still maintain an action for breach of fiduciary duty based upon the principal/agent status which the common law applies to a broker/customer relationship. Of course, the same basic concepts, e.g., the existence of a duty and a breach of that duty (along with the element of causation), will support a substantive tort claim for negligence.

401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971), which *Bennett* overrules, *Evans* is not stripped of its precedential value because the

*Evans* court never reached the issue of a statutory right of action, holding that the plaintiff had sufficiently alleged common law fraud.

■ During oral argument on the motion Fustok's counsel asserted that the defendants' deviation from industry norms is sufficient to support the common law claims. Transcript at 46 (May 10, 1985) ("hereafter "Tr. at ——"). This is not specifically pleaded in the Second Amended Complaint. Nonetheless, we conclude that Fustok's allegations that the defendants purchased millions of dollars in silver contracts without sufficient equity in the account and that the purchases were "wrongful" and in violation of established rules are sufficient to put the defendants on notice as to the bases for Fustok's claims of negligence and breach of fiduciary duty.[2]

## II.

■ Claims thirteen through sixteen of the Second Amended Complaint assert causes of action for fraud, breach of fiduciary duty, negligence and violation of N.Y. GEN.BUS.LAW § 352–c (McKinney 1984) ("the Martin Act"), respectively. All rely on the same allegations, namely, that the defendants, acting on instructions of Advicorp Advisory and Financial Corporation S.A. ("Advicorp"), purchased 400 Comex silver receipts from Gilion Financial for Fustok's account with knowledge that Advicorp's principals were also principals of Gilion who were "self dealing". Fustok accuses the Conti defendants of executing the purchase to provide Gilion with funds to meet a margin call by Conti.

The defendants move for summary judgment dismissing the thirteenth through sixteenth claims. They assert that the undisputed facts establish that the purchase complained of was executed on December 3, 1979; that the 400 silver receipts represented title to 2,023,504.38 troy ounces of physical silver bullion; that the official spot price for silver bullion on December 3, 1979 was $19.84 per ounce; that Fustok [through his agents] paid $18.26 per ounce for the silver; and that the immediate effect of the transaction was to generate a paper profit for Fustok of $3,197,136.92.

*See* Affidavit of Cameron Clark at Point "A" (filed Jan. 14, 1985) ("Clark Aff.") and Exhibit 1 (attached). They add that it is further established that the price of silver rose following the Gilion transaction until it reached a peak of $48.00 per ounce on January 21, 1980; and that until March 17, 1980 the price paid for the Gilion silver was less than the market price. *Id.* at ¶ 6 and Exh. 2. Fustok's counsel stated during oral argument "that in all likelihood the evidence at trial will show that the transaction took place in late November and there was no built-in profit at the time. . . ." Tr. at 48. However, Fustok has failed to submit any competent evidence to support this assertion. Accordingly, on the present state of the record the undisputed facts set forth by the defendants must form the bases of determination.

Upon these facts the defendants contend that, assuming, *arguendo*, that Advicorp was self-dealing and that the defendants executed the purchase of the 400 silver receipts with full knowledge of Advicorp's misconduct, summary judgment should nonetheless be granted for the defendants because their conduct did not cause Fustok any injury. They assert that any loss which Fustok ultimately incurred was proximately caused by "market forces" and not by the defendants' actions.

Fustok responds that he did not authorize the disputed transactions. He maintains that by March 1980 when he learned of the purchase the "paper profit" to which the defendants point had evaporated and he had incurred a "paper loss" of $14,920,000. To the extent that this argument is based on a claim of unauthorized trading in general it is no longer viable since that claim was dismissed subsequent to the filing of the instant motion. *See Fustok v. Conti-Commodity Services, Inc.,* 610 F.Supp. 986 (S.D.N.Y.1985) (granting summary judgment and dismissing claims one through three of the amended complaint). However, we did not then, and do not now conclude that Fustok authorized trading on

---

**2.** Since we conclude that Fustok has asserted valid common law claims we need not decide

what might be the significance of the fact that the LME does not have minimum margin rules.

his behalf involving self-dealing, the claim Fustok makes here.

Under both Illinois and New York law,[3] questions of proximate cause are questions of fact. *See, e.g., Ney v. Yellow Cab Co.,* 2 Ill.2d 74, 84, 117 N.E.2d 74, 80 (1954); *Havas v. Victory Stock Paper Co.,* 49 N.Y.2d 381, 388, 402 N.E.2d 1136, 1139, 426 N.Y.S.2d 233, 237 (1980); *accord Cullen v. BMW of North America,* 691 F.2d 1097, 1103 (2d Cir.1982), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983) (Oakes, J., dissenting). Although the defendants have established that on the date of the transaction at issue a "paper profit" was generated, they do not dispute the fact that Fustok ultimately sustained a loss. Nor have the defendants provided evidence which establishes as a matter of law that the then prevailing market conditions were the proximate cause of Fustok's injury. This case is currently set for trial before a jury on December 2, 1985. While a jury may conclude that market forces in 1979–1980 rather than the defendants' conduct caused Fustok's injury, it is nonetheless particularly within the factfinder's province to do so. *Havas v. Victory Stock Paper Co.,* 49 N.Y.2d at 388, 402 N.E.2d at 1139, 426 N.Y.S.2d at 237.

The motion is denied.

### III.

In the alternative to a motion for summary judgment the defendants move to dismiss the fourteenth and fifteenth claims for failure to state a cause of action on the ground that they owed no duty to Fustok to disclose the purported self-dealing of Advicorp in connection with the purchase of 400 Comex silver receipts. They argue that the fiduciary duty a broker owes to its customer is limited, and that the conduct of which Fustok complains is beyond its scope. Fustok answers that, particularly where, as here, the account in dispute is a

discretionary one, it is the affirmative duty of a broker to disclose to his customer all material information the broker possesses that may influence the customer's decision to trade, including the economic self-interest and self-dealing of the principals involved in a transaction executed for the customer's account.

The commodities decision upon which the defendants primarily rely is *Sherman v. Sokoloff,* 570 F.Supp. 1266 (S.D.N.Y.1983) (Knapp, J.). In *Sokoloff,* the plaintiffs entered into an agreement giving defendant Sokoloff, a registered floor broker, authority to trade platinum futures on the plaintiffs' behalf. Sokoloff opened the platinum account with Rosenberg Commodities ("Rosenberg"), a futures commission merchant ("FCM"), and Rosenberg executed the trades per Sokoloff's instructions. Unfortunately for the plaintiffs, shortly after the first month of trading ended their account began to sustain losses which amounted to $300,000 by the time the account was closed. *Id.* at 1267. Plaintiffs sued Rosenberg and Sokoloff for, among other things, fraud. Rosenberg moved for summary judgment which, after reviewing relevant commodities decisions in some detail, the court granted, stating:

> Our own research has located no case where a broker (or FCM) in Rosenberg's position has been saddled with the obligation of monitoring and reporting the trading pattern of a person in no way affiliated to him, let alone a partner of plaintiffs. We decline the invitation to impose such a duty.

*Id.* at 1270.

The similarities between *Sokoloff* and the facts alleged by Fustok are apparent: Advicorp, like Sokoloff, is Fustok's agent and was charged with the discretionary management of Fustok's commodities account; Advicorp opened Fustok's account with the defendant FCM; and Fustok as-

---

**3.** The defendants have previously asserted that Illinois law governs the dispute here. *See Fustok v. ContiCommodity Services, Inc.,* 577 F.Supp. 852, 856 n. 16 (1984). In connection to the current motion the defendants raise the is-

sue only in connection to the eighth, twelfth, and sixteenth claims. Nonetheless, as set forth above, the result does not change whether Illinois or New York law is applied here.

serts that Advicorp engaged in misconduct of which the defendants were aware but failed to disclose to Fustok. Nor do the similarities end there. Here, as in *Sokoloff*, Fustok "suppose[s] that much of the weight of [his] argument is carried merely by the conclusion that [the defendant], as FCM, was an 'agent' of plaintiff[ ]." *Id.* at 1269, n. 10.

In responding to the plaintiffs' assertions the *Sokoloff* court stated:

> To be sure, the FCM is indeed an agent of the client and owes him, accordingly, a fiduciary duty. *See, e.g., Monette v. Premex, Inc.,* (CFTC 1983) 2 Comm.Fut.L. Rep. (CCH) ¶ 21,733 at 26,882 (citing cases); *Graves v. Shearson, Hayden Stone* (CFTC 1981) [1980–1982 Trans. Binder] Comm.Fut.L.Rep. (CCH) ¶ 21,301 at 25,521. *Cf. Schenck v. Bear, Sterns & Co.,* (S.D.N.Y.1979) 484 F.Supp. 937 (securities brokers). That conclusion, however, does not end the inquiry, it merely frames it. The question is, "What is the scope of the agency?"

*Id.* We find this analysis sound. Nevertheless, notwithstanding the similarities between *Sokoloff* and the case at hand, for the reasons set forth below we conclude that Fustok has alleged facts sufficient to state claims resting upon a breach of a fiduciary duty.

The thirteenth claim alleges that the "[d]efendants executed Advicorp's instructions to purchase the 400 Comex silver receipts from Gilion Financial for the 055 account in order to provide Gilion Financial with funds to meet a margin call by defendant Conti." Second Amended Complaint at ¶ 64. It is true that this allegation is not specifically incorporated into the fourteenth and fifteenth claims (which are the claims at issue in this motion); however, it is evident that the fourteenth and fifteenth claims are based upon the conduct alleged in claim thirteen. Moreover, paragraph 64 is incorporated into the fourteenth and fifteenth claims by reference. *See id.* at ¶¶ 66 and 69.

 Accordingly, we conclude that, when fairly read, Fustok's accusations charge more than mere knowledge of wrongdoing, but instead allege that the defendants had improper economic motives of their own for executing the disputed transaction. Such conduct touches the core of the broker/customer relationship between Fustok and the defendants, who did the actual purchasing and executing of trading for Fustok's account. *Cf. Sokoloff, supra,* 570 F.Supp. at 1269 n. 10 ("We would have no hesitation to conclude that the FCM owes his client a fiduciary duty in the performance of the activities described in 17 C.F.R. § 1.3(p) (1982)—taking orders, executing trades, dealing with customer funds. *See, e.g.,* 17 C.F.R. §§ 1.20–1.28 (1982) (obligations regarding customer funds)."). We conclude that the defendants owed Fustok a duty to perform their limited obligations vis-a-vis his account without improper motives.

However, in so concluding we do not accept Fustok's argument that the defendants' responsibilities to him are so broad as to include a duty to keep Fustok apprised of the conduct of Advicorp. We hold only that if the defendants purchased the 400 silver receipts predominantly for their own economic benefit they will have breached their fiduciary duty. The allegations in the complaint which form the basis for this conclusion are, admittedly, scant. Nevertheless, taking the allegations as true for the purposes of this motion, we conclude the complaint is not legally insufficient for failure to state a claim as argued by the defendants.

### IV.

 The eighth, twelfth and sixteenth claims allege violations of the Martin Act (N.Y.GEN.BUS.LAW § 352-c) in connection with various transactions made on Fustok's behalf. The defendants argue that the claims should be dismissed because Illinois law governs the disputes concerning Fustok's account. They rely on paragraph 10 of the customer agreement that Fustok signed to open Fustok's account, which states in relevant part that

"[t]his agreement and its enforcement shall be governed by laws of the State of Illinois." *See* Clark Aff., Exh. 3.

■ Contractual choice of law provisions are generally enforced if the designated state's law bears a reasonable relationship to the contract. *See, e.g., Jaksich v. Thomson McKinnon Securities, Inc.,* 582 F.Supp. 485, 502 n. 16 (S.D.N.Y.1984); *Hunter v. H.D. Lee Co., Inc.,* 563 F.Supp. 1006, 1009 (N.D.N.Y.1983). Nevertheless, as Fustok correctly points out, it has been held that under New York's conflict of law rules[4] a contractual choice of law provision "does not bind [the parties] as to causes of action sounding in tort." *Klock v. Lehman Bros. Kuhn Loeb Inc.,* 584 F.Supp. 210, 215 (S.D.N.Y.1984) (quoting *Knieriemen v. Bache Halsey Stuart Shields, Inc.,* 74 A.D.2d 290, 293, 427 N.Y.S.2d 10, 12–13 (1st Dept.1980)); *see also Fantis Foods v. Standard Importing Co.,* 63 A.D.2d 52, 55, 406 N.Y.S.2d 763, 767 (1st Dept.1978), *rev'd on other grounds,* 49 N.Y.2d 317, 402 N.E.2d 122, 425 N.Y.S.2d 783 (1980).

The defendants reply that Fustok should not be allowed to circumvent his contractual agreement to abide by Illinois law. They assert, further, that courts tend to ignore the distinction between tort and contract claims which Fustok has raised.

For a number of reasons, the decisions upon which the defendants rely do not support their arguments. For instance, in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 2, 92 S.Ct. 1907, 1909, 32 L.Ed.2d 513 (1972) (choice of forum clause), the disputed provision applied broadly to *all* disputes arising between the parties, and in *Zerman v. Ball,* 735 F.2d 15, 19–20 (2d Cir.1984), the provision referred explicitly to the type of claim which plaintiff was asserting, in that case, a usury claim. On the other hand, some of the decisions, for example, *Jaksich v. Thompson McKinnon Securities, Inc.,* 582 F.Supp. at 502 n. 16, do not set forth the provisions of the clause

in stating the facts of the case. Finally, in *Teledyne Industries Inc. v. Eon Corp.,* 401 F.Supp. 729, 736 (S.D.N.Y.1975), *aff'd on opinion of district court,* 546 F.2d 495 (2d Cir.1976), the choice of law was apparently undisputed by the parties. Indeed, if the authority cited by the defendants provides support at all relevant to the facts of this case it is for the proposition that the circumstances of each case must be individually scrutinized.

Here, the choice of law provision does not contain broad language, but instead refers to the "enforcement of this agreement." Clark Aff., Exh. 3, ¶ 10. Nor do we interpret Fustok's complaint as alleging a breach of contract claim in tort disguise. *Cf. Altshul Stern & Co. v. Mitsui Bussan Kaisha, Limited,* 385 F.2d 158, 159 (2d Cir.1967) ("Plaintiff cannot avoid the broad language of the arbitration clause by casting its complaint in tort."). In sum, we find no compelling reason for ignoring the tort/contract distinction which the New York courts have adopted.

## V.

■ The twenty-third claim of the Second Amended Complaint alleges that:

Commencing on June 17, 1980 and at various times thereafter, defendant Conti debited the 055 account with interest charges exceeding $1.5 million. The interest charges were illegal and wrongful, having been computed on balances which plaintiff did not owe to defendant Conti and at interest rates which were illegal and improper.

On December 5, 1984 we granted Fustok leave to file an amended complaint which included, *inter alia,* the twenty-third claim alleged here. *See Fustok v. ContiCommodity Services, Inc.,* 103 F.R.D. 601 (S.D.N.Y.1984). In allowing Fustok to amend his complaint we rejected the defendants' argument that the additional claims which Fustok was seeking to assert were time

---

**4.** New York's choice of law rules govern here. *Zerman v. Ball,* 735 F.2d 15, 19–20 (2d Cir.1984).

barred because we concluded "the claims fall within the six year statute of limitations governing fraud actions. *See* N.Y. CIV.PRAC.LAW § 213(2) (McKinney Supp. 1983–84", *id.* at 604, and that in any event the proposed claims related back to the original complaint. *Id.* at 601 n. 1.

The defendants now argue that the twenty-third claim is nevertheless time barred because under New York law "an action to recover any overcharge of interest or to enforce a penalty for such overcharge" must be commenced within one year, N.Y. CIV.PRAC.LAW § 215(6), which Fustok has failed to do. Fustok responds that the defendants have misconstrued the twenty-third claim which, he asserts, is based upon his accusations of fraud. He maintains that the twenty-third claim seeks to recover the interest charged on trades that never should have been placed. The defendants reply that if the claim merely seeks recovery of charges based upon fraudulent transactions, it should be dismissed as duplicative.

The defendants correctly assert that since Fustok is not a New York resident and the defendants' actions in connection to charging interest occurred in Illinois, New York's borrowing statute requires the application of the statute of limitations which is found to be shorter after comparing the laws of New York and Illinois. *See* N.Y. CIV.PRAC.LAW § 202. In this instance the New York statute applies. Accordingly, if Fustok's claim was merely to recover overcharges in interest it would be time barred since Fustok did not bring this action until February 26, 1982, which was well over one year after his account with the defendant was closed on October 10, 1980. *See* N.Y.CIV.PRAC.LAW § 215(6). However, as we interpret the Second Amended Complaint, Fustok is alleging that the defendants' actions in charging Fustok interest on the basis of fraudulent trades constituted fraud and that the overcharges were fraudulent, or, at least part of the overall fraudulent scheme. Neither Illinois nor New York's statute of limitation bars this claim.

Moreover, we do not consider the twenty-third claim to be duplicative. It is true that for Fustok to recover on the twenty-third claim he will have to prevail on at least one of his other causes of action. However, the converse is not necessarily true, i.e., if he prevails on one of the other claims it does not automatically follow that Fustok will prevail on the twenty-third claim.

## VI.

The defendants assert that the Second Amended Complaint fails fully to comply with Federal Rule of Civil Procedure 9(b), which requires a plaintiff to give every defendant notice as to the specific wrongs with which that defendant has been charged. *Minpeco, S.A. v. ContiCommodity Services, Inc.*, 552 F.Supp. at 339. Fustok's response to the defendants' assertion does little more than to reiterate the allegations of the complaint.

The complaint alleges that:

Defendant Waltuch and others, in the regular course of their employment by defendants Conti and Conti Management, and defendant Goldschmidt, acting as an officer of Conti in the regular course of his employment by Conti Grain, caused defendant Conti to reallocate and transfer said 200 Comex silver contracts from defendant Conti and/or the persons for whom they had originally been purchased to the plaintiff in violation of the provisions of Section 4b of the Commodity Exchange Act (7 U.S.C. § 6b).

Second Amended Complaint at ¶ 37. Similar language describing the defendants' conduct is used in claims four, nine, twelve and thirteen of the Second Amended Complaint. *See id.* at ¶¶ 33, 50 and 62.

In *Minpeco, S.A. v. ContiCommodity Services, Inc.*, we stated that:

If Minpeco means to allege that, within the "groups," the activities of the individual defendants were identical, then it

should set forth such allegations specifically. If, on the other hand, Minpeco does not have a good faith basis for alleging that the defendants acted monolithically, then each defendant is entitled to notice in the pleadings as to its alleged role in the fraud.

552 F.Supp. at 338–39.

The defendants' characterization of Fustok's claims is not completely without merit. However, from reading the Second Amended Complaint in its entirety, including the descriptions of the various parties, it is possible to divine the nature of the fraud of which each defendant is accused. Nevertheless, in light of the numerous transactions and various claims, as an aid to the defendants as well as to the court, Fustok is required to attach an appendix to the Second Amended Complaint in the form of a chart or grid which sets forth, with respect to each claim, which defendants are named, the allegedly culpable conduct of each defendant, the theory of liability as to each named defendant, and where possible, the damages claimed in each cause of action.

For the foregoing reasons the motion is denied on condition that Fustok comply with the ruling above.

\* \* \* \* \* \*

The defendants' motion for partial summary judgment and to dismiss certain claims in the [Second] Amended Complaint is denied.

It is so ordered.